IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUSAN LIEBERT, et al.,

      Plaintiffs,

      v.                     Case No. 23-CV-672

WISCONSIN ELECTIONS
COMMISSION, et al.,

      Defendants.

---

## COMMISSION DEFENDANTS' BRIEF
## IN SUPPORT OF MOTION TO DISMISS

---

## INTRODUCTION

In this 42 U.S.C. § 1983 lawsuit, Plaintiffs challenge Wisconsin's absentee ballot witness requirement as an unlawful "voucher" of voter qualifications under Section 201 of the Voting Rights Act and, alternatively, as a violation of the materiality provision of the Civil Rights Act. Both claims fail to state a claim and are barred by the Eleventh Amendment.

The witness requirement does not violate Section 201 because it does not require a voter to "prove his qualifications by the voucher of a registered voter or members of any other class." 52 U.S.C. § 10501(b). It is simply a certification that the witness observed the voter following the absentee voter procedure and signing the voter certification. And unlike the prohibited vouching that led to

Section 201's enactment, Wisconsin's witness requirement permits *any* adult U.S. citizen to serve as a witness, not just registered voters or members of another class.

Plaintiffs' alternative claim fails for similar reasons. Wisconsin's absentee ballot witness requirement does not run afoul of the Civil Rights Act because neither witnessing the voter's marking of his ballot nor the certification of it require the voter to provide immaterial information about himself.

Plaintiffs' complaint fails to state a claim and must be dismissed. But even if Plaintiffs stated a claim, their complaint still must be dismissed because both the Wisconsin Elections Commission, as an entity, and the individual Commission defendants are entitled to Eleventh Amendment immunity.

## STATEMENT OF THE CASE

This case challenges Wisconsin's witness requirement for absentee ballots. An absentee voter is required to complete her ballot in the presence of a witness who is an adult U.S. citizen. Wis. Stat. § 6.87(4)(b)1.

After voting and sealing the ballot in the envelope provided by the clerk, the voter completes a printed certificate on the envelope, certifying to two sets of information. One relates to her residence, entitlement to vote, and that she is not voting at another polling place or in person. Wis. Stat. § 6.87(2). The

2

second relates to the process she has used to vote, including showing the unmarked ballot to the witness, voting in the witness's presence, casting the ballot in a way that no one can see how she voted, and sealing the ballot in the envelope. Wis. Stat. § 6.87(2).

The witness, who has watched this process, executes and signs the certificate. He certifies "that the above statements are true and the voting procedure was executed as there stated." Wis. Stat. § 6.87(2).

The Commission is required by law to "prescribe uniform instructions for municipalities to provide to absentee electors." Wis. Stat. § 6.869. The Commission's uniform instructions for absentee voters, Form EL-128, include instructions about the witness requirement:

## Uniform Instructions for Wisconsin Absentee Voters

Confirm the envelope from your clerk contains your ballot and the envelope you'll use to return your ballot.

**1** Read and follow the instructions on your ballot. Mistakes may prevent your votes from being counted.

**2** You must vote your ballot in the presence of an adult witness:



- Start by showing the witness your unmarked ballot.
- Mark your ballot in the presence of your witness.
- Your witness must confirm that you are the one completing your ballot but, because voting is a private activity, your witness cannot tell you who or what to vote for and cannot see the choices you make on your ballot.

**Who can be a witness?**

- A witness must be a U.S. Citizen who is at least 18 years old.
- For military or overseas voters, your witness must be at least 18 years old but is not required to be a U.S. Citizen.
- A witness can be a friend, spouse, family member, neighbor, etc.

**Who cannot be a witness?**

- A candidate on the ballot for this election.

If you're having trouble finding a witness or have questions about the witness requirement, please contact your municipal clerk or the Wisconsin Elections Commission for assistance. Contact information can be found on the back of this page.

**3** Refold your voted ballot and place it inside of the return envelope.

**4** Seal the envelope in the presence of your witness.

**5** Fill out the required sections of the form on the absentee return envelope.

(Dkt. 1:11–12.)

The Commission is also required to publish an election manual that explains the duties of election officials. Wis. Stat. § 7.08(3). The Commission's current Election Administration Manual, includes guidance about the witness requirement:

> An absentee ballot is marked by an absent voter, and sealed in an Absentee Ballot Certificate Envelope (EL-122). The Absentee Ballot Certificate Envelope (EL-122) is then completed and signed by the absentee voter, witnessed by an adult U.S. citizen, and mailed or delivered in person to the municipal clerk. Wis. Stat. § 6.87(4)(b).

(Dkt. 1:13–14 (citing 2023 Election Administration Manual, at 98).)

Plaintiffs filed this 42 U.S.C. § 1983 action, challenging the witness requirement as violating the Voting Rights Act and, alternatively, the Civil Rights Act. (Dkt. 1.) They claim that the witness requirement is an unlawful voucher of voter qualification in violation of Section 201 of the Voting Rights Act, codified at 52 U.S.C. § 10501. (Dkt. 1:18–19.) Plaintiffs alternatively claim that "[i]f the Witness Requirement is not a requirement that the witness vouch for the voter's qualifications to vote under Wisconsin law—*i.e.*, is not a voucher requirement in violation of the Voting Rights Act—then it is, by definition, 'not material in determining whether [an] individual is qualified under State law to vote'" in violation of the materiality provision of the Civil Rights Act, codified as 52 U.S.C. § 10101(a)(2)(B). (Dkt. 1:20.)

## LEGAL STANDARD

Motions to dismiss are meant to test the sufficiency of the complaint, not to decide the merits of the case. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject-matter jurisdiction. Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Sherwood v. Marchiori*, 76 F.4th 688, 693 (7th Cir. 2023).

A claim is plausible when the plaintiff alleges sufficient facts that would allow a court to reasonably infer that the defendant is liable for the alleged misconduct, but a court may decline to accept as true any allegations that "are no more than conclusions." *Iqbal*, 556 U.S. at 678–79. Although courts accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of Plaintiffs, it is nonetheless Plaintiffs' "burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014).

## ARGUMENT

### I.    Plaintiffs' complaint fails to state a claim under the Voting Rights Act or Civil Rights Act.

Plaintiffs' complaint should be dismissed in its entirety because it fails to state a claim. As other courts and the United States Department of Justice have concluded, a witness requirement for an absentee ballot does not violate the Voting Rights Act or Civil Rights Act.

#### A.    Wisconsin's absentee ballot witness requirement is not a "test or device" prohibited by Section 201 of the Voting Rights Act.

Plaintiffs' Voting Rights Act claim alleges that the witness requirement "is a requirement to prove 'qualification by . . . voucher' because the voter and

6

witness attestations together constitute such a voucher." (Dkt. 1:18.) That claim should be dismissed because the absentee ballot witness requirement is not a "test or device" for the voter to prove his qualifications within the meaning of Section 201 of the Voting Rights Act. It is simply a certification that the witness observed the voter execute the absentee voter procedure and sign the voter certification.

### 1. Section 201 prohibits requiring a member of another class to vouch for a voter's qualifications.

Section 201 of the Voting Rights Act provides that "[n]o citizen shall be denied, because of his failure to comply with any test or device, the right to vote in any Federal, State, or local election conducted in any State or political subdivision of a State." 52 U.S.C. § 10501(a). The term "test or device" includes:

> any requirement that a person as a prerequisite for voting or registration for voting (1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or members of any other class.

52 U.S.C. § 10501(b). The fourth "test or device" is at issue in this case: whether, "as a prerequisite for voting," the witness requirement forces an absentee voter to "prove his qualifications by the voucher of registered voters or members of any other class." *Id.*; (Dkt. 18:22.)

The voucher prohibition was enacted in 1965, and applied only to jurisdictions subject to preclearance and other special provisions in the Voting

Rights Act, in response to election practices used to discriminate against Black voters. Voting Rights Act of 1965, Pub. L. No. 89-110, § 4(b), 79 Stat. 437, 438 (1965). In one county in Alabama, for example, in order to register to vote, an applicant had to produce a "supporting witness" who "must affirm that he is acquainted with the applicant, knows that the applicant is a bona fide resident of the county, and is aware of no reason why the applicant would be disqualified from registering." *United States v. Logue*, 344 F.2d 290, 291 (5th Cir. 1965) (per curiam); *United States v. Ward*, 349 F.2d 795, 799–802 (5th Cir. 1965) (enjoining requirement that two registered voters establish the identity of an applicant); S. Rep. No. 89-162, 1965 U.S.C.C.A.N. 2508, 2549–50 (1965) (citing the *Logue* case as justification for the inclusion of the "voucher requirement" in the Voting Rights Act of 1965). The U.S. Department of Justice had brought a series of cases seeking to enjoin these practices, and Section 201 codified the ban on voucher requirements nationwide in 1970 for a limited time but was later made permanent in 1975. *See* Voting Rights Act Amendments of 1975, Pub. L. No. 94-73, § 102, 89 Stat. 400, 400 (1975).

Section 201 prohibits practices that parallel these historical, racially discriminatory voting practices. It does not prohibit non-discriminatory voting regulations. Courts have consistently rejected efforts to extend the "test and device" ban—including voucher requirements—beyond the statute's scope.

For example, shortly after the Voting Rights Act was passed, the court in *Davis v. Gallinghouse*, 246 F. Supp. 208, 217 (E.D. La. 1965), declined to invalidate a state law requiring documentary proof of residency requirements. Plaintiffs had argued that "voucher of . . . members of any other class" within the meaning of Section 201 included "the class of people who issue driver's licenses, library cards, rent receipts, postmarked envelopes, etc.," *Id.*, and so requiring documentation obtained from those people amounted to a voucher requirement. The court disagreed, reasoning that the plaintiff's theory misread what "other class" means in the statute: "Congress undoubtedly meant this ban on 'vouching' to hit at the requirement in some states that identity be proven by the voucher of two registered voters, which, where all or a large majority of the registered voters are white, minimizes the possibility of a [Black voter] registering." *Id.*

On the specific question of witness requirements for absentee ballots, courts have rejected challenges just like Plaintiffs make here: an argument that such regulations are vouching requirements prohibited by section 201.

In *People First of Alabama v. Merrill*, 467 F. Supp. 3d 1179, 1224–25 (N.D. Ala. 2020), the court declined to enjoin Alabama's witness statute, which required that all absentee ballots include an affidavit witnessed by a notary public or two adult witnesses, based on Section 201. The court concluded the state law did not require witnesses to vouch for a voter's identity or

qualifications for voting; the witness's signatures indicated only that they observed the voter sign the affidavit. *Id.*

In *Thomas v. Andino*, 613 F. Supp. 3d 926, 961–62 (D.S.C. 2020), the court declined to enjoin a South Carolina statute requiring that a witness observe the voter sign his absentee ballot based on Section 201. The court concluded that the statute lacked two separate features required for a violation of Section 201.

First, the court concluded that the witness requirement did not "mandate the witness to 'vouch' or 'prove' that the voter is qualified." *Id.* at 961. The court reasoned that the witness was not "required to confirm that the voter is registered to vote or 'qualified' in any way. Instead, the witness is only standing in to confirm that the voter completes the voter's oath and signs the document." *Id.* The court also explained that the voter's eligibility had already been verified in other ways, because absentee procedures permitted election officials to send absentee ballots to voters only after "verifying the voter's eligibility to vote absentee." *Id.* Thus, the court further explained, "[t]here would be no need to . . . require the *witness*, who may or may not know the voter, to sign upon the witness line for the purpose of verifying that the voter is registered or 'qualified' to vote." *Id.* at 962.

Second, the court concluded that the statute did not improperly require anything from a registered voter or member of any other class because it did

not require the witness himself to be a "registered voter" or "'member of any class' or subset of society;" rather, the requirement "allow[ed] for a myriad of competent individuals to witness the oath." *Id.*

> ### 2. Wisconsin's absentee ballot witness requirement does not require a voter to "prove his qualifications by the voucher of registered voters or members of any other class."

Section 201's vouching prohibition does not forbid Wisconsin's absentee ballot witness requirement, for two reasons. First, it does not require the voter to "prove his qualifications by voucher" of another person. Second, witnesses are not required to be "registered voters or members of any other class."

> #### a. The voter is not required to "prove his qualifications by voucher" of a witness.

Plaintiffs point to the voter and witness certification language in Wis. Stat. § 6.87(2) and argue that by certifying "that the above statements are true and the voting procedure was executed as there stated," Wis. Stat. § 6.87(2), the witness is necessarily attesting to all the statements in the voter's certification, including that the voter is entitled to vote in the election on the date and in the jurisdiction in question. (Dkt. 1:18–19.) Plaintiffs misunderstand what a witness attests to. The statute requires only that the witness confirm that he observed the voter execute the absentee voter procedure and sign the voter certification.

11

"[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110.

An elector's vote by absentee ballot has two parts: the voter's request for an absentee ballot, and voting the ballot and completion of the ballot certificate, which she carries out in a witness's presence.

In the first stage, registered voters wishing to vote absentee must submit a written absentee ballot request to the municipal clerk. Wis. Stat. § 6.86(1)(a)–(ac). Importantly, the municipal clerk will not issue an absentee ballot unless the clerk receives a written application from a registered and qualified elector. *See* Wis. Stat. § 6.86(1)(a)–(ar). The clerk will "not issue an absentee ballot to an elector who is required to enclose a copy of proof of identification . . . unless the copy is enclosed and the proof is verified by the clerk." Wis. Stat. § 6.87(1). Only voters who provide the required information receive an absentee ballot.

In the second stage, when the absentee voter chooses to vote, she completes the ballot in the presence of a witness. Wis. Stat. § 6.87(4)(b)1. She shows the unmarked ballot to the witness. *Id*. She marks the ballot in a

12

manner that does not disclose the contents of the vote. *Id.* Then, still in the presence of the witness, she folds the ballot and places it into the envelope. *Id.* The voter then completes the certificate on the ballot envelope, certifying to two sets of information.

One set relates to her residence, entitlement to vote, and that she is not voting at another polling place or in person:

> I, ...., certify subject to the penalties of s. 12.60 (1) (b), Wis. Stats., for false statements, that I am a resident of the [.... ward of the] (town) (village) of ...., or of the .... aldermanic district in the city of ...., residing at ....* in said city, the county of ...., state of Wisconsin, and am entitled to vote in the (ward) (election district) at the election to be held on ....; that I am not voting at any other location in this election; that I am unable or unwilling to appear at the polling place in the (ward) (election district) on election day or have changed my residence within the state from one ward or election district to another later than 28 days before the election.

Wis. Stat. § 6.87(2) (omission in original).

The second set relates to the process she has used to vote, including showing the unmarked ballot to the witness, voting in the witness's presence, casting the ballot in a way that no one could see how she voted, and sealing the ballot in the envelope:

> I certify that I exhibited the enclosed ballot unmarked to the witness, that I then in (his) (her) presence and in the presence of no other person marked the ballot and enclosed and sealed the same in this envelope in such a manner that no one but myself and any person rendering assistance under s. 6.87(5), Wis. Stats., if I requested assistance, could know how I voted.

Wis. Stat. § 6.87(2).

It is this latter information that the witness attests to. The witness, who has watched the process, executes and signs the certificate. He certifies "that the above statements are true and the voting procedure was executed as there stated." Wis. Stat. § 6.87(2). The certificate must include the witness' address. Wis. Stat. § 6.87(6d).

Plaintiffs' theory is that the witness certifies to both sentences in Wis. Stat. § 6.87(2), and thus everything the voter certifies to. That makes no sense. By certifying "that the above statements are true," the witness is not attesting to the information in the first sentence—the voter's certification about his status, residence, and decision not to vote in person. Instead, the witness attests to what he has seen: the voting process itself described in the second sentence. The witness attests to those actions that are directly observable by him; he is not charged to independently ascertain information about the voter's status. And such a certification would be unnecessary: the voter's eligibility has already been verified according to absentee procedure. Wis. Stat. § 6.86(1)(ar).

The Commission's guidance is consistent. The Commission instructs voters to "vote your ballot in the presence of an adult witness." (Dkt. 1:12 (form Form EL-128).) The voter does not need to know the witness, as the witness simply "confirm[s] that you are the one completing your ballot." (Dkt. 1:12.) The Commission's manual further advises that the absentee ballot is marked

by the voter, sealed in the envelope, "completed and signed by the absentee voter," and "witnessed by an adult U.S. citizen." (Dkt. 1:13–14 (2023 Election Administration Manual, at 98).) The Commission's guidance says nothing about the witness attesting to the voter's qualifications.

Ongoing litigation in state court challenging the witness requirement on other grounds agrees with this interpretation of statute. Plaintiffs there, represented by the same counsel as this case, assert that a witness certifies "that the voter completed those steps properly, and that the witness is an adult U.S. citizen, is not a candidate for office, and did not solicit or advise the voter for or against any candidate or measure." (Ex. 1 (*Rise Inc. v. Wis. Elections Comm'n*, No. 2022CV2446 (Wis. Cir. Ct. Dane Cnty. Sept. 18, 2023) (Doc. 213:15)).)[1] They describe the purpose of the witness certification as to "ensure that the ballot was voted (i) by the qualified voter, not another person, (ii) in a lawful manner, and (iii) without coercion or undue influence by the witness or anyone else." (*Id.*)

Read reasonably and in context, the absentee voter witness requirement mandates only that the witness confirm that he observed the voter execute the

---

[1] Plaintiffs' brief in support of their motion for summary judgment, which is part of the public court record in *Rise Inc. v. Wis. Elections Comm'n,* No. 2022CV2446 (Wis. Cir. Ct. Dane Cnty. Sept. 18, 2023), is attached as exhibit 1 to this brief. This Court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (in deciding defendants' motion to dismiss, district court properly considered public court documents filed in earlier state court case).

absentee voter procedure and sign the voter certification. It fundamentally differs from a voucher requirement, which requires the voter to locate an individual who can independently establish the voter's identity and qualifications. Like the similar witness requirements in *People First*, 467 F. Supp. 3d at 1224–25, and *Thomas*, 613 F. Supp. 3d at 961–62, the witness requirement here is not a "test or device" whereby the absentee voter must "prove his qualifications by the voucher" of a witness. It is not prohibited by Section 201 of the Voting Rights Act.

### b.   Witnesses are not required to be "registered voters or members of any other class."

The absentee ballot witness requirement is not prohibited for a second reason: witnesses are not required to be "registered voters or members of any other class." 52 U.S.C. § 10501(b). As explained, Section 201 targets the practice of conditioning registration or voting by Black electors on the consent of White electors or another group that could withhold the franchise. *See, e.g.,* *Ward*, 349 F.2d at 799. Unlike the prohibited vouching that led to Section 201's enactment, the witness requirement here does not limit potential witnesses to registered voters or any other relevant class. Rather, it permits *any* adult U.S. citizen to serve as a witness. *See* Wis. Stat. § 6.87(2), (4). This case is like *Thomas*, where the court concluded that requiring a witness signature on an absentee ballot did not require the participation of a registered voter or

member of any other class. *Thomas*, 613 F. Supp. 3d at 962. Defendants know of no case that has extended the voucher prohibition to such a class of witnesses.

**B.    The witness requirement does not violate the materiality provision of the Civil Rights Act.**

Plaintiffs allege an alternate claim—that the absentee ballot witness requirement of Wis. Stat. § 6.87(2) violates the materiality provision of the Civil Rights Act. This claim should be dismissed as well.

The materiality provision provides:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any . . . act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

The witness requirement also does not run afoul of this provision. As a matter of plain language reading, requiring a person to witness an absentee voter's casting of her ballot is not an "error or omission on any record or paper." 52 U.S.C. § 10101(a)(2)(B). It is a required *procedure*, reasonably designed to ensure the integrity of absentee voting. It is not a needless provision of data about the voter, like her social security number.

Plaintiffs' challenge here appears to be to the witness requirement on its face, not to the exclusion of ballots where a witness has not completed his

17

certification. But even if Plaintiffs were bringing the latter challenge, such errors would not come within the scope of the federal statute's prohibition because they do not seek immaterial information relating to the voter herself; the witness's certification simply confirms that the voter followed the absentee voting procedure.

And even if the materiality provision somehow related to a witness's certification, what the witness certifies to—that the voter actually voted her ballot, in conformance with Wisconsin law and free from influence from others— are material to the validity of the ballot.

Wisconsin Stat. § 6.87(2) requires the witness to provide his or her name, address, and a certification. That component facilitates the witness requirement by enabling election officials to locate and contact the witness, should the need arise. The Legislature has stated a policy that absentee voting must be carefully regulated to prevent the potential for fraud and abuse. *Id.* Wisconsin Stat. § 6.87(2)'s witness requirement is one of the statutory protections for absentee voting.[2]

---

[2] Many other states have absentee ballot witness requirement statutes. *See* Alaska Stat. § 15.20.203(b)(2); La. Stat. Ann. § 18:1306(E)(2); Miss. Code Ann. § 23-15-627; Mo. Rev. Stat. § 115.283; Okla. Stat. tit. 26, § 14-108; S.C. Code §§ 7-15-220, -380.

The United States, through its Department of Justice, filed a statement of interest in state court litigation about Wisconsin's absentee ballot witness requirement in Wis. Stat. § 6.87(2). (Ex. 2 (*League of Women Voters of Wis. v. WEC*, No. 22CV2472 (Wis. Cir. Ct. Dane Cnty. Oct. 14, 2022) (Doc. 53)).)[3] In that statement, the United States does not dispute that requiring an absentee witness *address* on the absentee ballot certificate in some form may be material in determining a voter's qualification to vote under state law. (*Id*.) If the address may be material, certainly the general requirement of a witness is not prohibited.

The United States Department of Justice has the authority to enforce the Civil Rights Act's materiality provision. *See* 52 U.S.C. § 10101(c). Its knowledge of Wisconsin's absentee ballot witness requirement and lack of enforcement action against the state is further evidence that it would not find Wis. Stat. § 6.87(2) a violation of the Civil Rights Act.

---

[3] The United States Department of Justice's brief, which is part of the public record in *League of Women Voters of Wisconsin v. WEC*, Case No. 22CV2472 (Wis. Cir. Ct. Dane Cnty. Oct. 14, 2022), is attached as exhibit 2. This Court may take judicial notice of this brief. *See Henson*, 29 F.3d at 284.

*League* is consolidated with *Rise*, the case referenced in footnote 1, *supra*. In those cases, plaintiffs challenged administration and enforcement of the absentee ballot witness *address* requirement of Wis. Stat. § 6.87(2) under the Civil Rights Act's materiality provision. The plaintiff in *League* does not challenge the absentee ballot witness requirement entirely.

Wisconsin Stat. § 6.87(2)'s absentee ballot witness requirement does not violate the Civil Rights Act's materiality provision. Plaintiffs' claim should be dismissed.

## II.   Eleventh Amendment immunity bars Plaintiffs' claims against the Commission defendants.

Plaintiffs' Voting Rights Act and Civil Rights Act claims should be dismissed against the Wisconsin Elections Commission, as an entity, based on Eleventh Amendment immunity. Their Voting Rights Act claims against the individual Commission defendants should be dismissed based on the Eleventh Amendment because the *Ex parte Young* exception is not met. And to the extent Plaintiffs' Civil Rights Act's materiality provision claims against the individual Commission defendants are based on inconsistent statewide enforcement, they should be dismissed under the same basis.[4]

### A.   The Eleventh Amendment bars suit against the Commission.

#### 1.   The Eleventh Amendment bars suits by private parties against states and state agencies.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. It "grants states immunity from

---

[4] This claim nonetheless fails on its merits, as explained above.

private suits in federal court without their consent." *Nuñez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016) (citing *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996)). The Eleventh Amendment bars suits against a state brought by private parties "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 54 (1996). "The very object and purpose of the eleventh amendment were to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties." *In re Ayers,* 123 U.S. 443, 505 (1887)).

## 2.    Section 1983 does not operate as a waiver of Eleventh Amendment immunity as to claims against a state.

Plaintiffs seek to vindicate their rights under the Voting Rights Act and Civil Rights Act pursuant to 42 U.S.C. § 1983. But that statute does not abrogate Eleventh Amendment immunity as to suits against a state.

"Title 42 U.S.C. § 1983 creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 132 (1994)). But § 1983 does not permit suit against a state: It is black letter law that a state is not a "person" under this statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Williamson*

21

*v. Indiana Univ.*, 345 F.3d 459, 463 (7th Cir. 2003) ("No cognizable claim under the civil rights statutes can be brought against a state, because it is not a 'person' for purposes of those provisions." (citing 42 U.S.C. § 1983)); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) ("section 1983 does not authorize suits against states (states not being 'persons' within the statute's meaning")).

Here, the Commission is a Wisconsin state agency. *See* Wis. Stat. §§ 5.025, 5.05, 15.61 (creation of the Commission). It is therefore not a "person" under § 1983. *See Kroll v. Bd. of Trustees*, 934 F.2d 904, 910 n.7 (7th Cir. 1991) ("A state agency with eleventh amendment immunity, however, is not a 'person' within the meaning of section 1983."). Plaintiffs' § 1983 claims against the Commission were therefore "doomed" from the start. *Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018).

### 3. The Voting Rights Act did not abrogate the states' Eleventh Amendment immunity from suit.

Moreover, even if Plaintiffs attempted to forgo § 1983 and bring their Voting Rights Act claim against the Commission directly under that statute, it would be barred by the Eleventh Amendment as well.

In *Simpson v. Hutchinson*, 636 F. Supp. 3d 951, 960–61 (E.D. Ark. 2022), the district court held that, although Congress has the authority to abrogate state sovereign immunity under some of its constitutional powers, it did not do so with the required "unmistakable clarity" in the Voting Rights Act. Thus,

22

because no abrogation occurred, the court dismissed the state of Arkansas from the private plaintiffs' Voting Rights Act claim. *Id.* at 961. This Court could do the same for the Commission.

> **B.    The individual Commission defendants must be dismissed from Plaintiffs' Voting Rights Act claims due to Eleventh Amendment immunity because the *Ex parte Young* exception does not apply.**

Not only should the Commission as an entity be dismissed from this action on Eleventh Amendment grounds, but the individual Commission defendants should be dismissed from Plaintiffs' Voting Rights Act claim as well.

"Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The doctrine of *Ex parte Young* is a judicially recognized exception to Eleventh Amendment immunity that allows an action for prospective injunctive relief by a private citizen against a state officer whose acts violate federal law. 209 U.S. 123, 159–60 (1908). "To take advantage of *Young* the plaintiffs must sue the particular public official whose acts violate federal law." *David B. v. McDonald,* 156 F.3d 780, 783 (7th Cir. 1998).

Here, Plaintiffs' Voting Rights Act claim alleges that the absentee voting statute requires the witness to vouch for the qualification of the elector. There are only three paragraphs in Plaintiffs' complaint that contain factual

allegations as to the actions of the individual Commission defendants (Dkt.
¶¶ 35–37), and none allege that those defendants are construing or enforcing
the state statute in a way that reveals an ongoing violation Voting Rights Act
violation of any voucher of elector qualifications. To the contrary, Plaintiffs'
complaint reveals that the Commission defendants construe state law in a way
that avoids a Voting Rights Act violation.

First, Plaintiffs allege that the individual Commission defendants
enforce the statute through Form EL-128, uniform instructions for
municipalities to provide to absentee electors. The form, however, says nothing
about the witness vouching for the elector's qualifications. (Dkt. 1 ¶ 35.)
Instead, the form merely tells the elector that "[y]our witness must confirm
that you are the one completing your ballot." (Dkt. 1:12.) Put another way, the
uniform instructions reveal the Commission defendants' interpretation of Wis.
Stat. § 6.87(2), and it is nothing like Plaintiffs'.

Second, Plaintiffs allege that the individual Commission defendants
enforce the state statute through prescribing a uniform absentee ballot
certificate envelope, Form EL-122. Again, this form does not reveal a
requirement of any witness vouching. It directs the witness only to "certify that
. . . [t]he above statements are true and the voting procedure was executed as
stated." (Dkt. 1 ¶ 32.) This language mirrors the statutory text of section
6.87(2). As explained above, the individual Commission defendants read

24

section 6.87(2) to require the witness to certify only to a voting process that he has just personally witnessed, not to opine on the voter's qualifications.

Third, Plaintiffs allege that the individual Commission defendants enforce the statute through the Election Administration Manual. (Dkt. 1 ¶ 37.) But the only factual allegation related to this manual, recently updated in September, also supports no ongoing federal law violation. Plaintiffs point to language that an absentee ballot certificate envelope, Form EL-122, "is . . . witnessed by an adult U.S. Citizen." (Dkt. 1 ¶ 37.) Nothing in this language even hints that a witness must vouch for the elector's qualifications in any way.

Plaintiffs' Complaint does not allege that individual Commission defendants are construing and enforcing the absentee ballot witness requirement in a way that would include any witness vouching for an elector's qualifications. The Complaint fails to allege that the individual Commission defendants are engaging in any ongoing federal violation. Thus, Plaintiffs' claims do not meet the *Ex parte Young* exception and must be dismissed.

### C.   The individual Commission defendants must be dismissed from Plaintiffs' Civil Rights Act claims to the extent they are based on different and inconsistent standards for absentee ballot witness addresses.

The individual Commission defendants understand Plaintiffs' complaint to include, as an alternative argument, a challenge to the state absentee ballot witness requirement under the Civil Right Act's materiality provision.

(Dkt. ¶¶ 42, 58, 61.) To the extent Plaintiffs allege claims against the individual Commission defendants due to "different and inconsistent standards for absentee ballot witness addresses," the Eleventh Amendment bars them, as well. (Dkt. ¶ 44.)

Plaintiffs' Complaint names the municipal clerks of the cities of Brookfield, Madison, and Janesville, Wisconsin, as defendants. (Dkt. 1 ¶¶ 20–22.) It contains allegations that these three local election officials, and others not named as defendants, enforce the absentee ballot witness requirement with "different and inconsistent standards" and "shifting local interpretations." (Dkt. 1 ¶¶ 38–40, 43, 45, 48.) Plaintiffs' Complaint, however, does not allege that the individual Commission defendants enforce the state witness requirement in this way. In other words, the inconsistent and differing enforcement occurs by the actions of local, not state, election officials. So, to the extent Plaintiffs allege a violation of the Civil Rights Act's materiality provision based on these applications, Plaintiffs' complaint contains no allegations that any of the individual Commission defendants participated in that activity. Plaintiffs' complaint therefore fails to allege that the individual Commission defendants are engaging in an ongoing federal law violation.

Accordingly, because the *Ex parte Young* exception is not met under these allegations, the Eleventh Amendment bars any such Civil Rights Act

claims against the individual Commission defendants, and they must be dismissed.

## CONCLUSION

Defendants respectfully ask this Court to dismiss the complaint against them for failure to state a claim upon which relief can be granted.

Dated this 25th day of October 2023.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

KARLA Z. KECKHAVER
Assistant Attorney General
State Bar #1028242

STEVEN C. KILPATRICK
Assistant Attorney General
State Bar #1025452

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218 (CJG)
(608) 264-6365 (KZK)
(608) 266-1792 (SCK)
(608) 294-2907 (Fax)
gibsoncj@doj.state.wi.us
keckhaverkz@doj.state.wi.us
kilpatricksc@doj.state.wi.us