FILED
09-18-2023
CIRCUIT COURT
DANE COUNTY, WI
2022CV002446

STATE OF WISCONSIN      CIRCUIT COURT      DANE COUNTY
BRANCH 10

| | |
|---|---|
| RISE, INC.,<br><br>JASON RIVERA,<br><br>           Plaintiffs,<br>   v.<br><br>WISCONSIN ELECTIONS COMMISSION,<br><br>MARIBETH WITZEL-BEHL,<br>in her official capacity as City Clerk for the<br>City of Madison, Wisconsin,<br><br>TARA McMENAMIN,<br>in her official capacity as City Clerk for the<br>City of Racine, Wisconsin,<br><br>CELESTINE JEFFREYS,<br>in her official capacity as City Clerk for the<br>City of Green Bay, Wisconsin,<br><br>           Defendants,<br><br>WISCONSIN STATE LEGISLATURE,<br><br>           Intervenor. | Declaratory Judgment<br>Case No. 2022CV2446<br>Case Code: 30701<br><br>Hon. Ryan D. Nilsestuen |

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Exhibit 1

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF UNDISPUTED FACTS ......................................................................... 2

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

    I.    Plaintiffs have standing. .......................................................................................... 8

    II.   "Address" in Section 6.87(2) requires only enough information to identify a location
        where the witness may be communicated with ...................................................... 10

        A.    Section 6.87's plain text supports Plaintiffs' construction ..................................... 11

        B.    Section 6.87's purpose supports Plaintiffs' construction. ...................................... 13

        C.    Related statutes support Plaintiffs' construction ...................................................... 14

        D.    Plaintiffs' construction promotes voter enfranchisement and avoids absurd and
            unconstitutional results ........................................................................................... 15

        E.    Plaintiffs' definition is administrable ...................................................................... 17

    III.   There are no genuine issues of material fact and Plaintiffs are entitled to judgment
         as a matter of law. .................................................................................................. 18

CONCLUSION .................................................................................................................. 18

Exhibit 1

**INTRODUCTION**

By statute, absentee ballots must be witnessed and the witness's "address" must be printed on the ballot certificate. Wis. Stat. § 6.87(2). But the statute does not require that the address take any particular form. Section 6.87(2) is satisfied so long as there is enough information for a clerk to determine a location where the witness may be communicated with. For some witnesses, this information will be effectively conveyed by some combination of street name, street number, and either municipality or zip code. For others, particularly students who reside on college campuses, it may be conveyed by a residence hall name and room number. And for many, such as cohabitant family members, it will be clearly conveyed by noting that the witness has the same address as the voter. All these examples would be understood as "addresses" in ordinary usage; all therefore satisfy an absentee voter's statutory obligation to provide a witness "address."

Under Defendants' more rigid views, however, many of those ballot certificates would be treated as lacking the required address and returned to voters for correction—even though the certificate contains enough information to communicate with the witness if necessary. The Wisconsin Elections Commission ("WEC") took the position in its September 14, 2022, clerk communication that "address" means street name, street number, and municipality. The Madison Clerk admits that her office has defined address to mean street name, street number, and either municipality or zip code. The Racine Clerk admits that her office has defined address to mean street name, street number, and municipality. The Green Bay Clerk admits that her office has taken the strictest approach, requiring everything WEC and Racine require plus either zip code or state. And all three Clerk Defendants admit that they return ballot certificates that do not satisfy their chosen definitions to voters for correction.

Defendants' inconsistent constructions of Section 6.87(2) mean that ballots that would be accepted and canvassed in some localities are rejected and returned for corrections in others. And

1

Exhibit 1

all of Defendants' inconsistent approaches are *wrong*. By its plain terms, Section 6.87(2) does not require any specific components of an "address." It just requires an "address." Reading it as Defendants have imposes an improper, atextual restriction on Wisconsin absentee voters.

The issue in this case is simple, but the consequences are profound. If Defendants are permitted to continue advancing and applying their unlawful constructions of Section 6.87(2), absentee voters like Plaintiff Jason Rivera will continue to face a risk of improper ballot rejection. And voter-mobilization organizations like Plaintiff Rise, Inc. will need to tailor their mail-voting instructions to each of Wisconsin's election-administering municipalities—or to shift their resources away from vote by mail as a get-out-the-vote strategy. The Court can prevent these harms by correctly construing Section 6.87(2) and granting Plaintiffs' motion for summary judgment.

## STATEMENT OF UNDISPUTED FACTS

I.    **Wisconsin law requires that absentee ballots must be witnessed and that the witness's "address" must be included on the absentee ballot certificate.**

Section 6.87 sets out Wisconsin's procedures for voting by absentee ballot. It states that an absentee ballot must be provided to the voter along with an envelope with a printed certificate on one side. Wis. Stat. § 6.87(2). Among other things, the certificate must bear a witness attestation, followed by fields for the witness's printed name, "address," and signature. Wis. Stat. § 6.87(2). When the ballot is returned, the witness's address must be written in the given field. Wis. Stat. § 6.87(2). The statute does not define the term "address."

If a clerk receives an "absentee ballot with an improperly completed certificate," "the clerk may return the ballot to the elector . . . whenever time permits the elector to correct the defect and return the ballot within the period authorized [by statute]." Wis. Stat. § 6.87(9). The statute does not define the term "improperly completed." But Wisconsin law assigns municipal clerks, including Clerk Defendants Witzel-Behl, McMenamin, and Jeffreys, the authority to apply Section

Exhibit 1

6.87(9) to individual absentee ballot certificates. Specifically, municipal clerks are tasked with determining upon receipt whether each absentee ballot certificate is "improperly completed" and, if so, whether to return a ballot and certificate to the elector for correction. Wis. Stat. § 6.87(9). Municipal clerks are thus the officials who determine whether any given absentee ballot will be included in the absentee ballot canvass without further action by the voter or will instead be returned to the voter for correction. The statute further provides that "[i]f a certificate is missing the address of a witness, the ballot may not be counted." Wis. Stat. § 6.87(6d).

II.    **WEC guidance authorized clerks to correct absentee ballot certificates with defective witness-address information until September 2022, when the Waukesha County Circuit Court enjoined the guidance.**

As early as 2016, WEC issued guidance that "a *complete* address contains a street number, street name and name of municipality." WEC, *AMENDED: Missing or Insufficient Witness Address on Absentee Certificate Envelopes*, Oct. 18, 2016 (the "2016 WEC guidance") (emphasis altered), Doc. 4, Ex. 2. That did not mean, however, that ballots would be deemed "improperly completed" for lacking a "complete address," because WEC also directed that clerks "*must* take corrective actions in an attempt to remedy a witness address error. If clerks are reasonably able to discern any missing information from outside sources, clerks are not required to contact the voter before making that correction directly to the absentee certificate envelope." *Id.* WEC summarized its guidance to be "that municipal clerks shall do all that they can reasonably do to obtain any missing part of the witness address." *Id.* Wisconsin elections from 2016 through the August 2022 primary were administered in accordance with that guidance.

On September 7, 2022, the Republican Party of Waukesha County and three individual Republican voters obtained an order from the Waukesha County Circuit Court enjoining the 2016 WEC guidance. *White v. Wis. Elections Comm'n*, No. 22CV1008, Temporary Injunction (Sept. 7, 2022), Doc. 4, Ex. 3. The Waukesha court concluded that the guidance was contrary to law because

Exhibit 1

it required local officials to fill in missing address information. *Id.* The Waukesha court held that local election officials lacked "the duty or ability to modify or add information to incomplete absentee ballot certifications." *Id.* ¶ 8. Importantly, however, the Waukesha court did not discuss or rule on the proper definition of "address" under Wis. Stat. § 6.87(2), or otherwise determine when a ballot certificate is defective so as to require correction by a voter. *Id.* ¶¶ 7–9. In fact, the court expressly left open the question of what constitutes an adequate "address" for the purposes of Wis. Stat. § 6.87(2). *White v. Wis. Elections Comm'n*, No. 22CV1008, Tr. of Mot. To Stay Hr'g at 46:24-47:6 (Sept. 13, 2022), Doc. 8, Ex. 5 ("I made no decision regarding what constitutes an address. I have not done anything to overturn what WEC may define as an address. I have done nothing and I'm not asked to interpret what is a missing address or what is an incomplete address and I've not decided, no one has asked me to decide what happens to absentee ballots that have an incomplete witness address. That's not at issue before me.").

### III.   After the Waukesha ruling, WEC issued a clerk communication defining witness "address" to mean "street number, street name, and name of municipality."

On September 14, 2022, WEC issued a clerk communication announcing that the Waukesha court had enjoined the 2016 WEC guidance as invalid and contrary to law. WEC, *Temporary Injunction on WEC Guidance re Missing Absentee Witness Address (White v. Wisconsin Elections Commission, 22-CV-1008)*, Sept. 14, 2022 (the "September 14 Clerk Communication"), Doc. 38, Ex. 8. In that same communication, WEC also informed clerks that the Waukesha court "had not overturned the existing WEC definition of address contained in the now-invalidated memoranda" which required three components—"namely, street number, street name, and name of municipality." *Id.* The September 14 Clerk Communication did not acknowledge that the 2016 guidance had in fact defined "complete address," not "address." *See*

Exhibit 1

*id.* Nor did it discuss whether a zip code is an adequate substitute for a municipality name (and if not, why not). *See id.*

### IV.    Plaintiffs filed this lawsuit to clarify the meaning of witness "address" before the November 2022 general election, but the Court never ruled on the merits.

Plaintiffs filed the initial Complaint in this lawsuit on September 27, 2022, naming WEC and Madison Clerk Witzel-Behl as Defendants. Doc. 3. Plaintiffs in this action are Rise, Inc., and Mr. Jason Rivera. Plaintiff Rise is a student-led 501(c)(4) nonprofit organization that runs statewide advocacy and voter mobilization programs in Wisconsin and throughout the country. Aff. of Arin Anderson in Supp. of Pls.' Mot. for Summary Judgment ("Anderson Aff."), ¶¶ 2–5. Rise's mission is to empower college students to advocate for free public higher education and to end homelessness, housing insecurity, and food insecurity among college students. *Id.* ¶ 2. Rise's efforts to empower and mobilize students as participants in the political process are critical to its mission because building political power within the student population is a necessary condition to achieving Rise's policy goals. *Id.* ¶ 3. In 2020, Rise helped nearly 12,000 Wisconsin voters make a plan to vote. *Id.* ¶ 7. Of these, 3,887 voted by mail. *Id.* ¶ 8. In 2022, Rise helped just under 8,000 voters make plans to vote in municipalities around the state, including Madison, Racine, and Green Bay. *Id.* ¶ 7. Rise brought this lawsuit because student voters Rise aims to mobilize are particularly likely to return absentee ballot certificates bearing witness addresses that do not satisfy the contrived, rigid definition of witness "address" endorsed by Defendant WEC and applied by the Clerk Defendants. *Id.* ¶¶ 11–14. Plaintiff Mr. Rivera is a qualified Wisconsin voter currently registered in Dane County. Aff. of Jason Rivera in Supp. of Pls.' Mot. for Summary Judgment ("Rivera Aff."), ¶ 5. Mr. Rivera has voted by absentee ballot in the past and plans to continue doing so in the future. *Id.* ¶ 6.

Exhibit 1

Seeking clarity about the requirements for absentee ballot certificates in time for the November 2022 general election, Plaintiffs quickly moved for a temporary injunction. Doc. 5. The Legislature was granted intervention while that motion was pending. Doc. 71. The Court denied the temporary injunction motion after finding, principally, that WEC's definition in the September 14 Clerk Communication—"street number, street name and municipality"—is "the status quo and that the requested temporary injunction is unnecessary to preserve the status quo." Doc. 79. The Court did not address Plaintiffs' likelihood of success on the merits and did not resolve the definition of "address." *See id.* After new evidence emerged—which showed widespread confusion and inconsistency in how municipalities were interpreting the term "address" and evaluating the sufficiency of absentee ballot certificates—Plaintiffs moved for summary judgment and an expedited briefing schedule. Doc. 85; Doc. 86. The Court denied the motion to expedite after determining that it could not rule on summary judgment before Defendants had answered. Doc. 102. Plaintiffs then renewed their temporary injunction motion, citing the new evidence of confusion and inconsistency. Doc. 103; *see* Doc. 104. The Court denied that motion on November 2, again based primarily on the Court's determination that a temporary injunction would "change[] the status quo, rather than preserv[ing] it." Doc. 129.

## V.    Wisconsin municipal clerks, including the Clerk Defendants, employed different, conflicting definitions of witness "address" in administering the November election.

Municipal clerks applied widely divergent interpretations of the witness-address requirement in the November 2022 general election, each of which required specific components rather than just sufficient information to convey a location where the witness may be communicated with:

- The City of Madison Clerk's Office has admitted that it interpreted witness "address," for purposes of Wis. Stat. § 6.87, to mean street number, street name, and at least one of either municipality or zip code, and returned absentee ballots with certificates not satisfying that definition to voters for correction. *See* Answer of Defendant Maribeth

Exhibit 1

Witzel-Behl to the Amended Complaint, Doc. 178, ¶ 44; First Amended Complaint, Doc. 160, ¶ 44.

- The City of Racine Clerk's Office has admitted that it interpreted witness "address," for purposes of Wis. Stat. § 6.87, to mean street number, street name, and municipality, and returned absentee ballots with certificates not satisfying that definition to voters for correction. *See* Answer and Affirmative Defenses of Defendant Tara McMenamin, Doc. 177, ¶ 45; First Amended Complaint, Doc. 160, ¶ 45.

- The City of Green Bay Clerk's Office has admitted that it interpreted witness "address," for purposes of Wis. Stat. § 6.87, to mean street number, street name, municipality, and at least one of either state or zip code, and returned absentee ballots with certificates not satisfying that definition to voters for correction. *See* Answer of Defendant Celestine Jeffreys, Doc. 179, ¶ 46; First Amended Complaint, Doc. 160, ¶ 46.

Thus, absentee ballots were treated differently in different Wisconsin municipalities during the November election, and ballots were rejected for lacking particular components even where what was provided unambiguously specified a location where the witness could be communicated with.[1]

After the election, Plaintiffs filed a First Amended Complaint naming Racine Clerk McMenamin and Green Bay Clerk Jeffreys as additional Defendants. Doc. 160. The Legislature moved to dismiss the First Amended Complaint, Doc. 181, but the Court denied the motion, Doc. 202. This case was subsequently consolidated for trial with *League of Women Voters of Wisconsin v. Wisconsin Elections Commission*, No. 22CV2472. Doc. 203. Plaintiffs now move for summary judgment.

## LEGAL STANDARD

"Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Golden Sands Dairy LLC v. Town of Saratoga*,

---

[1] Summary judgment evidence adduced in the now-consolidated case, *League of Women Voters of Wisconsin v. Wisconsin Elections Commission*, provides extensive documentary evidence of the inconsistent practices to which Defendants in this case have admitted. *See* Exs. 1–25 to Aff. of Daniel S. Lenz, League of Women Voters of Wis. v. Wis. Elections Comm'n, No. 2022cv2472 (Dane County Cir. Ct. Aug. 7, 2023), Doc. 115.

Exhibit 1

2018 WI 61, ¶ 16, 381 Wis. 2d 704, 913 N.W.2d 118. A declaratory-judgment claim is appropriately resolved by summary judgment, particularly when the claim "turns upon a question of law." *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶ 33, 309 Wis 2d 365, 749 N.W.2d 211. The Uniform Declaratory Judgments Act "is to be liberally construed and administered to achieve a remedial purpose." *Id.* ¶ 42; *see also Lister v. Bd. of Regents of Univ. Wis. System*, 72 Wis. 2d 282, 307, 240 N.W.2d 610, 625 (1976) ("Declaratory relief is appropriate wherever it will serve a useful purpose.").

## ARGUMENT

Plaintiffs are entitled to summary judgment because they have standing to bring both claims and all other conditions for summary judgment on both claims are satisfied. The term "address," as used in Section 6.87(2), does not by its plain meaning require any specific components, only enough information to convey a location where the witness may be communicated with. Given that statutory construction, there are no disputes of material fact, and Plaintiffs are entitled to judgment as a matter of law.

**I.    Plaintiffs have standing.**

Plaintiffs have standing to bring their claims. No party contested Plaintiffs' standing at the motion to dismiss stage or at any point during the pre-election litigation.

*First*, Rise has standing to bring Count I, a claim for declaratory judgment under the Uniform Declaratory Judgments Act, Wis. Stat. § 806.04. Whether a plaintiff has standing to sue under the Uniform Declaratory Judgments Act "turns on whether it has presented a justiciable controversy." *Town of Eagle v. Christensen*, 191 Wis. 2d 301, 315, 529 N.W.2d 245, 250 (Ct. App. 1995). Declaratory judgment claims are justiciable when four conditions are satisfied: "(1) a right is asserted against a defendant who has an interest in contesting it; (2) the controversy is between persons whose interests are adverse; (3) the plaintiff has a legally protectable interest in the

Exhibit 1

controversy; and (4) the controversy is ripe for judicial determination." *Wis. Mfrs. & Comm. v. Evers*, 2021 WI App 35, ¶ 13, 398 Wis. 2d 164, 960 N.W.2d 442 (cleaned up).

Count I is a justiciable controversy under that test. Rise asserts its right to engage in get-out-the-vote activities under the proper construction of Section 6.87's witness-address requirement. *See* Anderson Aff. ¶¶ 11–14. And as the course of litigation has made clear, at least WEC and the Intervenor are keen to contest those rights. Moreover, Rise's interests are adverse to Defendants' and Intervenor's. WEC promulgated and has defended the September 14 guidance and the construction of Section 6.87(2), while the Clerk Defendants admit that they have adopted, and are applying, constructions of Section 6.87(2) that do not comport with Plaintiffs'. And Intervenor has forcefully defended a component-based construction of Section 6.87 throughout the litigation. Rise has a legally protectable interest in the controversy because it has engaged and plans to continue engaging in get-out-the-vote activities in Wisconsin, activities which necessarily implicate the proper construction of Section 6.87's requirements. *See* Anderson Aff. ¶¶ 11–14. And the claim is ripe, because the facts are "sufficiently developed to allow a conclusive adjudication." *Carlin Lake Ass'n, Inc. v. Carlin Club Props., LLC*, 2019 WI App 24, ¶ 35, 387 Wis. 2d 640, 929 N.W.2d 228.

*Second*, Rise and Mr. Rivera each independently have standing to bring Count II under Section 227.40. A plaintiff has standing under Section 227.40 when "the rule or guidance document or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff." Wis. Stat. § 227.40(1). WEC's September 14 Clerk Communication impairs the rights of both Rise and Mr. Rivera. As discussed, the communication misinterprets the witness-address requirement and has resulted in Wisconsin municipalities adopting conflicting and incorrect interpretations of the requirement. As a

Exhibit 1

Wisconsin voter, Mr. Rivera faces the threat of disenfranchisement as a result of this error. Rivera Aff. ¶¶ 6–9. And Rise, too, is injured, because confusion surrounding the witness-address requirement means that Rise now must steer almost all of the voters it assists away from absentee voting and toward in-person voting. Anderson Aff. ¶ 13. Otherwise, Rise fears its voters will face an intolerable risk of disenfranchisement based on purported witness-address defects. *Id.* ¶¶ 11–13. Rise must take this step despite its firm belief that absentee voting would otherwise be a safer and more convenient option for many of its target voters, particularly student voters who reside on campus but prefer to vote in their hometowns and voters with disabilities. *Id.* ¶ 14.

## II.   "Address" in Section 6.87(2) requires only enough information to identify a location where the witness may be communicated with.

To comply with Section 6.87(2)'s requirement that an absentee ballot certificate must include the witness's "address," the certificate needs to include only information sufficient to identify a place where the witness may be communicated with. A traditional mailing address may suffice, but it is not required. Alternatives like "ditto" or "same as voter," or a student's residence hall and room number, also constitute "addresses" for purposes of the statute, as they all communicate a location where the witness may be communicated with. Defendants would instead require that the witness address take a particular form, but that requirement does not appear in the statute.

In construing a statute, courts must "begin[] with the language of the statute." *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). If the language is ambiguous, courts also consider the context, structure, and purpose of the statute. *Id.* ¶¶ 45–49. All the interpretive tools support Plaintiffs' statutory construction here.

Exhibit 1

**A.  Section 6.87's plain text supports Plaintiffs' construction.**

Section 6.87 does not define "address" or specify any particular required form of "address." It follows that any information falling within that term's ordinary meaning suffices. An undefined term like "address" must be given its "common, ordinary, and accepted meaning." *Kalal*, 2004 WI 58, ¶ 45. "Although Wis. Stat. § 6.87(6d) requires an address, § 6.87(2) and (6d) are silent on precisely what makes an address sufficient." *Trump v. Biden*, 2020 WI 91, ¶ 49, 394 Wis. 2d 629, 951 N.W.2d 568 (Hagedorn, J., concurring).

The plain meaning of "address," used as a noun, is "a place where a person or organization may be communicated with." *Address*, Merriam-Webster.[2] That is an unmistakably functional definition—it does not require any specific information, so long as what is provided suffices to specify a location where the person in question may be communicated with. Intervenor's preferred definition, from the *Oxford English Dictionary*, is similar. It defines "address" as "[t]he particulars of the place where a person lives or an organization is situated . . . these particulars considered as a location where a person or organization can be contacted by post." *Address*, Oxford English Dictionary.[3] To be sure, that definition specifies that "address" in this sense "*typically* consist[s] of a number, street name, the name of a town or district, and often a postal code." *Id.* (emphasis added). But the very statement that an "address" *typically* consists of those components necessarily acknowledges that they are not always essential, and that it is possible to provide an "address" meeting that definition that does not include them all. And, indeed, Intervenor has itself proven the point—it has not argued that a postal code is required, though that is also "often" a component of its own preferred definition.

---

[2] https://merriam-webster.com/dictionary/address (last updated June 11, 2023).

[3] https://www.oed.com/view/Entry/2208 (last updated Dec. 2022).

Exhibit 1

Common sense confirms that a perfectly coherent, functional "address" does not necessarily include all—and in some cases *any*—of the specific components that Defendants' proposed definitions require. Consider the following examples, each of which unambiguously conveys the "place where a person . . . may be communicated with":

- A witness who is the voter's spouse or family member lists an address of "same," "see above," "ditto," or an equivalent, and the voter's complete address is just above where the witness has signed.

- A resident of a senior housing community provides his room number at Attic Angels or Capitol Lakes rather than the street number, street name, and municipality.

- A university student lists the name and room number of her residence hall, but no street name or number, because that is how mail is processed on her campus.

- A witness omits a street number because none has been assigned (*e.g.*, after new construction), and instead uses coordinates or landmarks.

- A witness omits a municipality because she resides in one of the several counties that use street addresses providing precise geographic coordinates instead of traditional street numbers—*e.g.,* W182-S8200 Racine Ave., in Muskego—and knows that those coordinates inherently convey municipality.

- A witness omits a municipality because her address is on a street that is immediately familiar to nearly all residents of the municipality (for example, Mifflin Street in Madison, or Como Road in Como).

- A witness omits a municipality, but the street name is unique to a single Wisconsin municipality (for example, Moen Valley Road in Black Earth, Mc Bride Road in Maple Bluff, or Darn Republican Street in Chetek).

In common parlance, every one of the foregoing examples would be sufficient to locate the witness to communicate with them, and accordingly be fairly described as an "address," consistent with the term's plain and ordinary meaning. Neither the text of the statute nor the plain meaning of the word "address" provides any basis for treating any of them as anything less, or for insisting that an "address" instead entails specific components found nowhere in the statute. The Court has "no power to insert what the legislature chose to omit." *Wis. Dep't of Workforce Dev. v. Wis. Lab. & Indus. Rev. Comm'n*, 2017 WI App 68, ¶ 23, 378 Wis. 2d 226, 903 N.W.2d 303.

Exhibit 1

The Court could stop here. The ordinary meaning of "address" encompasses any information that specifies where a voter may be communicated with. When "the meaning of the statute is plain, [courts] ordinarily stop the inquiry." *Kalal*, 2004 WI 58, ¶ 45 (quoting *Seider*, 2000 WI 76, ¶ 43). But if there is any doubt, the statute's purpose and the statutory context confirm that the foregoing statutory construction is correct.

### B. Section 6.87's purpose supports Plaintiffs' construction.

Plaintiffs' proposed definition is also consistent with Section 6.87's purpose. "A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes—that is, from its context or the structure of the statute as a coherent whole." *Kalal*, 2004 WI 58, ¶ 49. Here, the "coherent whole" establishes that the requirement of a witness address exists to help clerks identify and contact witnesses. Under Section 6.87, an absentee ballot is witnessed as follows: the voter (i) exhibits the ballot "unmarked to the witness," then (ii) "mark[s] the ballot and enclose[s] and seal[s] the same" in the certificate envelope in the presence of the witness. Wis. Stat. § 6.87(2), (4). The witness then certifies that the voter completed those steps properly, and that the witness is an adult U.S. citizen, is not a candidate for office, and did not solicit or advise the voter for or against any candidate or measure. Wis. Stat. § 6.87(2), (4).

The straightforward inference from this context is that, to the extent the Witness Address Requirement serves any purpose at all, it serves the same purpose as the certification it immediately follows—namely, to ensure that the ballot was voted (i) by the qualified voter, not another person, (ii) in a lawful manner, and (iii) without coercion or undue influence by the witness or anyone else. Requiring the witness's address gives clerks a way to contact the witness if any of these three requirements becomes the subject of dispute. So long as sufficient information is provided to specify a location where the witness may be communicated with, that purpose is fully served. In

Exhibit 1

contrast, always requiring a witness's street number, street name, and municipality, even if there is other, unambiguous information about where the witness may be found, would serve no purpose at all.

### C. Related statutes support Plaintiffs' construction.

The text of related statutes further confirms Plaintiffs' reading, demonstrating that where Wisconsin lawmakers want to require a particular form of address, they have said so expressly. This is telling: as the Court of Appeals recently instructed in another case interpreting Wisconsin election statutes, "[w]here the legislature uses similar but different terms in a statute, particularly within the same section, we may presume it intended the terms to have different meanings." *State ex rel. Zignego v. WEC*, 2020 WI App 17, ¶ 64, 391 Wis. 2d 441, 941 N.W.2d 284 (quoting *State ex rel. DNR v. Wis. Ct. of Appeals*, 2018 WI 25, ¶ 28, 380 Wis. 2d 354, 909 N.W.2d 114), *aff'd as modified*, 2021 WI 32, 396 Wis. 2d 391, 957 N.W.2d 208; *see also State v. Schmidt*, 2021 WI 65, ¶ 57, 397 Wis. 2d 758, 960 N.W.2d 888 ("The Presumption of Consistent Usage canon of construction . . . in part dictates that '*a material variation in terms suggests a variation in meaning*.'" (emphasis added) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012))).

Start with Section 6.34, which sets out the requirements for proof of residence by military voters. Unlike Section 6.87, Section 6.34(3)(b) requires that documents include a "*complete residential* address," which it expressly defines as "a numbered street address, if any, and the name of a municipality." (Emphasis added.) If "address" necessarily included all those components on its own, then the word "complete" and the express requirement of a numbered street address and municipality name would be surplusage. Yet "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Kalal*, 2004 WI 58, ¶ 46. Further, Section 6.34(3)(b)'s interjection of the qualifier "*if any*" after "numbered street address," suggests

14

Exhibit 1

that *even* a "complete" address so defined will sometimes lack one or two components, because sometimes no "numbered street address" will exist. Thus, if Defendants' definitions of witness "address" were correct, "address" would impose an even stricter set of requirements than "complete residential address." This cannot be correct.

In contrast, Plaintiffs' construction harmonizes Section 6.87 with Section 6.34. Under Plaintiffs' reading, Section 6.34's expressly defined "complete residential address" requires a three-part address (with an exception where a numbered street address is not available), while Section 6.87's "address" (unadorned by "complete") requires only sufficient information to determine where a witness can be communicated with. *Cf. Trump*, 2020 WI 91, ¶ 49 (Hagedorn, J., concurring) (noting the "stark contrast" between Sections 6.87 and 6.34(3)(b)). This gives each of the terms used by the election statutes independent force.

Similarly, Section 6.87(2)'s requirements for absentee *voters'* own address information supports Plaintiffs' interpretation. That provision delineates the specific components required for the voter's own address: "I am a resident of the [. . . ward of the] (town)(village) of . . . , or of the . . . aldermanic district in the city of . . . , residing at . . .* in said city, the county of . . . , state of Wisconsin." Wis. Stat. § 6.87(2) (alterations in original). But the statute provides no similar delineation of the necessary components for a witness's address. *See* Wis. Stat. § 6.87(2) (specifying only that the witness's "(Address)" be provided).

### D. Plaintiffs' construction promotes voter enfranchisement and avoids absurd and unconstitutional results.

Plaintiff's construction of Section 6.87 also complies with Section 5.01(1)'s mandate that the election statutes be construed to "give effect to the will of the electors . . . notwithstanding informality or failure to fully comply with some of [the elections statutes'] provisions." Adopting any of Defendants' definitions would risk disenfranchising voters who provided sufficient

Exhibit 1

information to specify where their witness could be communicated with, but who did so in a form other than that Defendants have chosen to require.

Further, Section 6.84(2)'s narrow limitation on Section 5.01(1)'s rule of construction does not apply here. Section 6.84(2) provides that "notwithstanding [Section 5.01(1)]," Sections 6.86, 6.87(3)–(7), and 9.01(1)(b)(2) and (4) must "be construed as mandatory." None of those provisions is in dispute here. Section 6.87(6d)—the only of the above provisions remotely implicated by this litigation—concerns only the *remedy* for a "missing" address when the ballot is canvassed, not the initial requirement of an address. That requirement exists under Section 6.87(2), which falls under Section 5.01(1)'s pro-voter rule. Section 6.84(2) therefore expressly removes the underlying requirement for a witness address from the exceptions to Section 5.01(1)'s mandate to construe the election statutes to further voter intent.

Plaintiffs' construction of the statute is also supported by the Court's duty to interpret statutes, where possible, to "avoid a constitutional conflict." *Milwaukee Branch of the NAACP v. Walker*, 2014 WI 98, ¶ 64, 357 Wis. 2d 469, 501, 851 N.W.2d 262, 278. On Defendants' view, Section 6.84 would mean that ballots may not be counted even when cast by qualified voters and even when enough information is provided to specify a location where the witness may be communicated with—indeed, even when a household member witnesses a ballot that includes the voter's address information and writes "same" instead of providing the same information all over again. Such a voter's ballot would be counted only if it was corrected to include the voter's and the witness's address a second time on the same ballot certificate—information that "same" already unambiguously conveyed.

This approach is wholly incompatible with the Wisconsin Constitution's guarantee of the fundamental right to vote and the Wisconsin Supreme Court's recognition that the right to vote is

Exhibit 1

a fundamental right that "lies at the very basis of our Democracy." *State ex rel. Frederick v. Zimmerman*, 254 Wis. 600, 613, 37 N.W.2d 473 (1949); Wis. Const. art. III, § 1. "Strict scrutiny is applied to statutes that restrict a fundamental right." *Mayo v. Wis. Injured Patients & Fams. Comp. Fund*, 2018 WI 78, ¶ 28, 383 Wis. 2d 1, 914 N.W.2d 678. And while the Constitution allows the Legislature to enact laws providing for absentee voting, Wis. Const. art. III, § 2, "election laws must not destroy or impair the right to vote." *League of Women Voters of Wis. Educ. Network, Inc. v. Walker*, 2014 WI 97, ¶ 50, 357 Wis. 2d 360, 383. If Section 6.84 mandated rejecting, rather than counting, the votes of otherwise-qualified electors just because their witness certificates have nonmaterial technical defects, Section 6.84 would fail constitutional muster. The Court should therefore decline to interpret the statute as imposing such an unnecessarily technical requirement.[4]

### E. Plaintiffs' definition is administrable.

Contrary to Intervenor's argument in its motion to dismiss briefing, Doc. 183 at 11–12, Plaintiffs' construction is readily administrable. Plaintiffs simply propose that, in deciding whether an absentee ballot certificate complies with Section 6.87's requirement of a witness address, a clerk should evaluate whether the certificate conveys where the witness may be communicated with. That is precisely what clerks did from 2016 until September 2022. Intervenor's contrary speculations are not admissible evidence, and even if they were, they would not suffice to prove that clerks are incapable of doing something they have in fact done for much of the past decade.

---

[4] If, as the League of Women Voters argues in the consolidated case, Defendants' interpretation would cause the requirement to be preempted by the Voting Rights Act, that provides an additional reason to avoid such an interpretation. *See, e.g.*, *Marbry v. Superior Court*, 185 Cal. App. 4th 208, 231 (Cal. Ct. App. 2010) ("State law should be construed, whenever possible, to be in harmony with federal law, so as to avoid having the state law invalidated by federal preemption."); *Martin ex rel. Hoff v. City of Rochester*, 641 N.W.2d 1, 18 (Minn. 2002) (similar); *State v. Mooney*, 98 P.3d 420, 425 (Utah 2004) (similar).

Exhibit 1

Moreover, unlike the status quo in which different municipalities are imposing different requirements, Plaintiffs' construction would provide a uniform statewide standard.

**III.    There are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law.**

Summary judgment is appropriate because there are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law. Questions of statutory construction, including the proper construction of witness "address," are pure questions of law. *See State v. Hanson*, 2012 WI ¶ 14, 338 Wis. 2d 243, 808 N.W.2d 390. There is no material dispute about any question of fact relevant to either of Plaintiffs' claims. WEC admits that its September 14 Clerk Communication contains a component-based definition of address, "namely, street number, street name, and name of municipality." First Amended Complaint, Doc. 160, ¶ 41; Defendant Wisconsin Elections Commission's Answer and Defenses to First Amended Complaint, Doc. 180, ¶ 41. All Clerk Defendants admit that they are rejecting absentee ballots with certificates that do not satisfy their various component-based definitions of "address." *See* First Amended Complaint, Doc. 160, ¶¶ 44–46; Answer of Defendant Maribeth Witzel-Behl to the Amended Complaint, Doc. 178, ¶ 44; Answer and Affirmative Defenses of Defendant Tara McMenamin, Doc. 177, ¶ 45; Answer of Defendant Celestine Jeffreys, Doc. 179, ¶ 46. Nor is there any dispute as to the facts underpinning Plaintiffs' standing. *See supra* Part I. The Court should therefore grant summary judgment to Plaintiffs.

<strong>CONCLUSION</strong>

For the foregoing reasons, Plaintiffs request that the Court grant their motion for summary judgment.

Exhibit 1

DATED this 18th day of September, 2023.        Respectfully submitted,

_Electronically signed by Diane M. Welsh_        David R. Fox*
Diane M. Welsh, SBN 1030940        Spencer W. Klein*
PINES BACH LLP        Samuel T. Ward-Packard, SBN 1128890
122 W. Washington Ave, Suite 900        ELIAS LAW GROUP LLP
Madison, WI 53703        250 Massachusetts Ave. NW, Suite 400
Telephone: (608) 251-0101        Washington, D.C. 20001
Facsimile: (608) 251-2883        Telephone: (202) 968-4652
dwelsh@pinesbach.com        dfox@elias.law
        sklein@elias.law
        swardpackard@elias.law

Makeba Rutahindurwa*
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 968-4599
mrutahindurwa@elias.law

_Attorneys for Plaintiffs Rise, Inc. and Jason Rivera_

*Admitted _pro hac vice_

19

Exhibit 1