## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SUSAN LIEBERT; ANNA HAAS; ANNA POI; and ANASTASIA FERIN KNIGHT,<br><br>        Plaintiffs,<br><br>    v.<br><br>WISCONSIN ELECTIONS COMMISSION; DON M. MILLIS, ROBERT F. SPINDELL, MARGE BOSTELMANN, ANN S. JACOBS, MARK L. THOMSEN, and CARRIE RIEPL, in their official capacities as commissioners of the Wisconsin Elections Commission; MEAGAN WOLFE, in her official capacity as administrator of the Wisconsin Elections Commission; MICHELLE LUEDTKE, in her official capacity as city clerk for the City of Brookfield; MARIBETH WITZEL-BEHL, in her official capacity as city clerk for the City of Madison; and LORENA RAE STOTTLER, in her official capacity as city clerk for the City of Janesville,<br><br>        Defendants. | Civil Action No. 3:23-cv-00672 |

### PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO REPUBLICAN PARTY COMMITTEES' MOTION TO INTERVENE

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Background ................................................................................................................. 2

Argument ................................................................................................................... 3

    I.      The Republican Party Committees are not entitled to intervention as of right ............ 3

        A.     The Republican Party Committees lack a unique and cognizable interest related to this action. ................................................................................... 4

        B.     This case will not practically impair the Republican Party Committees' claimed interests ...................................................................................... 7

        C.     The Republican Party Committees' claimed interests are adequately represented by Defendants. .............................................................. 10

    II.     The Court should deny the Republican Party Committees permissive intervention. ........................................................................................ 15

Conclusion ............................................................................................................... 16

Certificate of Service .............................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABS Global, Inc. v. Inguran, LLC,*
No. 14-cv-503-WMC, 2015 WL 1486647 (W.D. Wis. Mar. 31, 2015) ................................14

*Allen Calculators v. National Cash Register Co.,*
322 U.S. 137 (1944)........................................................................................................16

*American National Bank & Trust Co. of Chicago v. City of Chicago,*
865 F.2d 144 (7th Cir. 1989) ....................................................................................12, 13

*Bost v. Illinois State Board of Elections,*
75 F.4th 682 (7th Cir. 2023) ...............................................1, 3, 4, 9, 11, 13, 15, 16

*Common Cause Indiana v. Lawson,*
No. 1:17-cv-03936, 2018 WL 1070472, (S.D. Ind. Feb. 27, 2018)......................5, 6

*Crawford v. Marion County Election Board,*
553 U.S. 181 (2008)..........................................................................................................6

*Democratic Executive Committee of Florida v. Detzner,*
347 F. Supp. 3d 1017 (N.D. Fla. 2018)...........................................................................8

*Democratic National Committee v. Bostelmann,*
No. 20-cv-249-WMC, 2020 WL 1505640, (W.D. Wis. Mar. 28, 2020) ..............11, 14, 15, 16

*Donald J. Trump for President, Inc. v. Boockvar,*
493 F. Supp. 3d 331 (W.D. Pa. 2020)..........................................................................5, 8

*Eu v. San Francisco County Democratic Central Committee,*
489 U.S. 214 (1989)..........................................................................................................6

*Flying J, Inc. v. Van Hollen,*
578 F.3d 569 (7th Cir. 2009) ........................................................................................4, 5

*Ligas ex rel. Foster v. Maram,*
478 F.3d 771 (7th Cir. 2007) ...........................................................................................9

*Keith v. Daley,*
764 F.2d 1265 (7th Cir. 1985) ......................................................................................5, 15

*La Union del Pueblo Entero v. Abbott,*
29 F.4th 299 (5th Cir. 2022) ........................................................................................7, 8

*Meridian Homes Corp. v. Nicholas W. Prassas & Co.,*
683 F.2d 201 (7th Cir. 1982) ......................................................................................4, 10

*Purcell v. Gonzalez,*
549 U.S. 1 (2006)..........................................................................................................6, 9

*Shays v. Federal Election Commission,*
414 F.3d 76 (D.C. Cir. 2005)............................................................................................9

*Sierra Club, Inc. v. E.P.A.*,
   358 F.3d 516 (7th Cir. 2004) .................................................................5, 16

*Sokaogon Chippewa Community v. Babbitt*,
   214 F.3d 941 (7th Cir. 2000) ............................................................4, 5, 10

*Solid Waste Agency of North Cook County v. U.S. Army Corps of Engineers*,
   101 F.3d 503 (7th Cir. 1996) ....................................................................10

*Wisconsin Education Association Council v. Walker*,
   705 F.3d 640 (7th Cir. 2013) ....................................................................12

## Statutes & Rules

Fed. R. Civ. P. 24(a) ....................................................................................2, 4, 6

Fed. R. Civ. P. 24(b) ........................................................................................15

Fed. R. Civ. P. 25(d) ..........................................................................................2

Wis. Stat. § 5.05 ..................................................................................................2

Wis. Stat. § 7.15(1) .......................................................................................3, 12

## Other Authorities

*Election Administration Manual*,
   Wisconsin Elections Commission (Sept. 14, 2022).................................3, 12

*Wisconsin's Commitment to Election Integrity*,
   Wisconsin Elections Commission (last accessed Oct. 30, 2023)..............2, 12

## INTRODUCTION

Plaintiffs—four Wisconsin voters—brought this action to ensure Wisconsin elections are administered consistently with federal law. Now, the Republican National Committee and the Republican Party of Wisconsin (together, "Republican Party Committees" or "Committees") seek to intervene to advance abstract interests and goals related to election administration and election integrity. But these generic interests are not uniquely held by the Committees, as the Seventh Circuit requires for intervention as of right. Nor are these interests threatened by Plaintiffs' action, which will only *improve* the fairness and efficiency of Wisconsin elections. And these interests are adequately protected by the existing defendants in this case, who are charged by law with ensuring that Wisconsin elections are administered smoothly and with integrity. To the extent the Republican Party Committees care who wins this litigation—and one can hardly tell from their motion if they do or why they would—the Federal Rules clearly disfavor their participation as parties.

The Committees search far and wide for cases in other jurisdictions granting political party intervention, but they conspicuously ignore the decision issued by the Seventh Circuit just three months ago that controls this case. In *Bost v. Illinois State Board of Elections*, 75 F.4th 682 (7th Cir. 2023), the Seventh Circuit affirmed the denial of intervention to a parallel movant (a state party committee) seeking to intervene for a parallel purpose (to defend a challenged election law) because, the court held, a parallel defendant (the state board of elections) adequately represented the movant's interests, and the movant's participation could reasonably result in an inefficient use of judicial resources, *id.* at 690–91. Here, the case against intervention is even stronger. Unlike in *Bost*, where the party committee at least identified some goals and interests distinct from those of the government defendants, the Republican Party Committees seeking intervention in this lawsuit simply parrot the named defendants' legal obligations as their own private pursuits. Because Rule

24(a) requires much more, the Court should deny intervention as of right. And because there is no reason to believe that the Republican Party Committees would bring anything to this litigation other than duplicative filings and redundant argument, the Court should also reject the Republican Party Committees' request for permissive intervention.

## BACKGROUND

Plaintiffs bring federal Civil Rights Act and Voting Rights Act claims against Wisconsin's requirement that a voter procure the assistance of an adult U.S. citizen witness to cast a valid absentee ballot. *See* Compl. for Declaratory & Injunctive Relief, ECF No. 1 (challenging Wis. Stat. § 6.87, the "Witness Requirement"). Plaintiffs named as Defendants the Wisconsin Elections Commission ("WEC"); its commissioners; its administrator; and the municipal clerks, in their official capacities, for the cities of Brookfield, Madison, and Janesville.[1]

Defendant WEC is an independent agency responsible for administering Wisconsin's "laws relating to elections and election campaigns, other than laws relating to campaign financing." Wis. Stat. § 5.05(1). WEC is authorized, among other things, to "[p]romulgate rules," "investigate violations of laws [it] administer[s]," and "conduct or prescribe requirements for educational programs to inform electors about voting procedures, voting rights, and voting technology." Wis. Stat. § 5.05(1)(f), (2m)(a), (2w), (12). "[P]art of its mission [is] to ensure the integrity of individual ballots as well as election results in Wisconsin." *Wisconsin's Commitment to Election Integrity*, Wis. Elections Comm'n, https://elections.wi.gov/wisconsins-commitment-election-integrity (last accessed Oct. 30, 2023).

---

[1] Carrie Riepl replaced Joseph Czarnezki as a WEC commissioner on October 17, 2023, and therefore is "automatically substituted" for him as a Defendant under Federal Rule of Civil Procedure 25(d). Plaintiffs have amended this brief's caption accordingly.

Additionally, Defendant Clerks of the Cities of Brookfield, Madison, and Janesville have "charge and supervision of elections . . . in the[ir] municipalit[ies]." Wis. Stat. § 7.15(1). The Clerks "are entrusted with the responsibility of ensuring fair, accessible, and transparent elections" and the "obligations to protect the integrity of elections and ensure public confidence in the election process." *Election Administration Manual*, Wis. Elections Comm'n (Sept. 14, 2022), https://elections.wi.gov/resources/manuals/election-administration-manual; *see also* Wis. Stat. § 7.15(1)(e) ("The clerk shall inspect systematically and thoroughly the conduct of elections in the municipality so that elections are honestly, efficiently and uniformly conducted.").

The Committees moved to intervene on October 16, 2023. Mot. to Intervene as Defs. by the Committees, ECF No. 9 ("Mot."). On October 25, 2023, WEC moved to dismiss Plaintiffs' complaint, arguing that "[b]oth claims fail to state a claim and are barred by the Eleventh Amendment." Comm'n Defs.' Br. in Supp. of Mot. to Dismiss 1, ECF No. 20.

## ARGUMENT

The Republican Party Committees are not entitled to intervention as of right, and permissive intervention should be denied.

## I.      The Republican Party Committees are not entitled to intervention as of right.

A non-party seeking to intervene as of right bears the burden of satisfying four required elements: (1) their application must be timely; (2) they must have an "an interest relating to the subject matter of the action"; (3) they must show "potential impairment, as a practical matter, of that interest by the disposition of the action"; and (4) they must establish "lack of adequate representation of the interest by the existing parties to the action." *Bost*, 75 F.4th at 686 (quoting *Illinois v. City of Chicago*, 912 F.3d 979 (7th Cir. 2019)). The Republican Party Committees' "failure to fulfill any one of the requirements of Rule 24(a) would be sufficient to deny intervention as of right." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 205 (7th Cir.

3

1982); *see also Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000) ("Intervention of right will not be allowed unless all requirements of the Rule are met.").

The Republican Party Committees have failed to meet their burden of satisfying these elements. Although Plaintiffs do not contest the timeliness of the motion to intervene, the Committees failed to prove each of Rule 24(a)(2)'s other three requirements: they do not hold a unique and cognizable interest related to this action; none of the interests they identify would be impaired by the disposition of this case; and, in any event, the purported interests identified by the Committees are already adequately represented by WEC and the other named defendants.

## A. The Republican Party Committees lack a unique and cognizable interest related to this action.

To intervene as of right, a proposed intervenor must have a "direct, significant and legally protectable interest in the subject at issue in the lawsuit." *Bost*, 75 F.4th at 686 (cleaned up) (quoting *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985)). Such an interest must be "unique" in the sense that it must "belong to the would-be intervenor in its own right, rather than deriv[ing] from the rights of an existing party." *Id.* at 687 (citing *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 806 (7th Cir. 2019) (Sykes, J., concurring)). And the interest must be something more than the minimum Article III interest required for a party to have standing to bring suit. *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009).

Here, however, the Republican Party Committees' generalized interest in election integrity is insufficient for Article III standing, let alone the higher bar for intervention as of right. *See, e.g.*, *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 376 (W.D. Pa. 2020) (holding that plaintiffs, including Republican National Committee, lacked standing to vindicate generalized election integrity interests); *Common Cause Ind. v. Lawson*, No. 1:17-cv-03936-TWP-MPB, 2018 WL 1070472, at *3 (S.D. Ind. Feb. 27, 2018) (denying intervention to election-focused

foundation seeking to defend challenged election practices where foundation lacked standing); *see also Sierra Club, Inc. v. E.P.A.*, 358 F.3d 516, 518 (7th Cir. 2004) (denying intervention where movant's "concern [was] not a legal 'interest' . . . but a political or programmatic one" (emphasis omitted)); *Keith v. Daley*, 764 F.2d 1265, 1269 (7th Cir. 1985) ("a generalized interest . . . is not enough to establish intervention as of right"). Compounding this deficiency, the Committees never explain how election integrity is a "direct, significant and legally protectable interest" implicated by this action. *Keith*, 764 F.2d at 1268. Because the Committees bear the burden of satisfying each element for intervention, the Court cannot be required to speculate about how a successful challenge to the Witness Requirement could implicate election integrity.

Instead of identifying unique and cognizable interests, the Republican Party Committees rely on conclusory statements and the unremarkable fact that political parties have sometimes been granted intervention in other cases with different postures, different standards, and different facts. *See* Mot. 1 n.1, 7. *But see Common Cause Ind.*, 2018 WL 1070472, at *4 (recognizing jurisdictions outside the Seventh Circuit do not require standing to intervene as of right). Those cases are of little help here, where the Committees are asserting, at best, "only an indirect interest in the outcome of this suit" because of its general connection to voting and elections. *Sokaogon Chippewa Cmty.*, 214 F.3d at 947. Because the outcome of a lawsuit can affect in some way or another "countless strangers to the litigation" who cannot all be made parties, "[r]emoteness of injury is a standard ground for denying" intervention. *Flying J*, 578 F.3d at 571. For example, in *Common Cause Indiana*, the district court held that the proposed intervenor's claimed interests in Indiana's "control over structuring its own election system [and] in restrictions on Indiana's ability to conduct fair and robust elections . . . are too generalized to afford a right to intervention under

Rule 24(a)." 2018 WL 1070472, at *4–5. Similarly, the Republican Party Committees' "interests . . . in how Wisconsin's elections are run," Mot. 4, are too generalized and indirect.

Cases like *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989), and *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), are of no help to the Republican Party Committees. These decisions—which did not address intervention—simply recognized that a *state's* interest in promoting "public confidence in the integrity of the electoral process" can be relevant to the merits of a state's defense against constitutional challenges to election laws. *Crawford*, 553 U.S. at 197; *see also Eu*, 489 U.S. at 231.[2] Nothing in those cases requires intervention to be granted to all interested political parties whenever a lawsuit implicates the electoral process in some way.

Nor can the Republican Party Committees find any support in *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006), which they rely upon for the apparent proposition that *any* change to absentee voting rules will undermine election integrity, Mot. 7–8. *Purcell* had nothing to do with intervention or anyone's right to participate in litigation at all. *Purcell* simply emphasized the need for "clear guidance" about election rules in advance of an "impending election." 549 U.S. at 5. But the injunction Plaintiffs request will be clear, and the next elections in which the Republican Party Committees claim to be interested are not currently impending—indeed, they will not occur until nearly a year from now, in *November 2024*. *See* Mot. 4. Because the Republican Party Committees failed to identify a cognizable interest at issue in this litigation, they cannot satisfy a necessary condition for intervention as of right.

---

[2] The Republican Party Committees tellingly alters their quotation of *Eu*. *See* Mot. 7. The full sentence reads: "A *State* indisputably has a compelling interest in preserving the integrity of *its* election process." *Eu*, 489 U.S. at 231 (emphases added).

**B.**      **This case will not practically impair the Republican Party Committees' claimed interests.**

In addition to being insufficient for intervention, the interests that the Republican Party Committees identify are not threatened by this action. Plaintiffs' challenge to the Witness Requirement does not jeopardize the "integrity of the election process," "orderly administration of elections," voters' "incentives" to vote, or "confidence in our electoral system." Mot. 7–8 (cleaned up). In fact, Plaintiffs' action is most likely to *vindicate* these interests. As Plaintiffs allege, Wisconsin's Witness Requirement is contrary to clear federal law. Requiring Defendants to conduct voting processes consistently with federal requirements will promote election integrity; absolving elections officials from having to review absentee ballot envelopes for satisfactory witness signatures will improve administrative efficiency; eliminating a hurdle that absentee voters must clear to have their ballots counted will remove a disincentive for potential voters who are unable to cast their ballots in person; and ensuring that election results reflect the views of all qualified voters—even those who lack ready access to the necessary witness—will enhance confidence in our electoral system. The Committees' motion—which barely mentions the challenged Witness Requirement at all—provides no basis to conclude otherwise.

The Republican Party Committees seek to analogize this action to a Fifth Circuit case, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022), but the differences between that matter and this one are revealing. In *La Union*, party committees intervened to defend challenges to Senate Bill 1 ("SB 1"), an omnibus election bill in Texas "pertaining to voter registration, voting by mail, poll watchers, and more." 29 F.4th at 304. That bill, the Fifth Circuit explained, changed the "entire election landscape," *id.* at 307; here, in contrast, Plaintiffs seek to correct one discrete aspect of absentee voting that Defendants are currently administering in violation of federal law. Moreover, Texas's omnibus SB 1 significantly added to the rights of poll watchers, who are

appointed *by political party leaders* and are empowered by Texas law to observe elections "*on behalf of*" *political parties. Id.* (emphasis added) (citation omitted). Thus, in *La Union*, the party committees seeking intervention were able to demonstrate that they "expend significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process." *Id.* at 306. In *that* context, the Fifth Circuit found that plaintiffs' effort to roll back poll watcher prerogatives could practically impair the party committees' interests.

Plaintiffs' challenge to the Witness Requirement is different in every way. Nothing in Wisconsin law suggests that the Witness Requirement exists to benefit political parties. And the Republican Party Committees never indicate that they have invested resources to somehow take advantage of the Witness Requirement. Indeed, even if the Committees have incurred costs connecting their absentee voters with qualified witnesses—which they never suggest—Plaintiffs' requested injunction would *benefit*, rather than impair, the Republican Party Committees by enabling them to redirect those resources to other priorities. Unlike the archetypal case for political party participation in litigation, the Committees do not even allege that a change to the Witness Requirement would place them in a competitive disadvantage in the electoral process. *See, e.g.*, *Democratic Exec. Comm. of Fla. v. Detzner*, 347 F. Supp. 3d 1017, 1025 (N.D. Fla. 2018) (recognizing Democratic committee had standing to challenge practice that disenfranchised Democratic votes). *But see Boockvar*, 493 F. Supp. 3d at 380 (rejecting standing of Republican Party committees because alleged competitive disadvantage from changes to absentee voting rules was entirely speculative). Republican voters are subject to the Witness Requirement no differently than Democratic, third party, and independent voters, and enjoining that requirement will ensure that more absentee ballots from eligible voters of all stripes may be counted. *Contra Bost*, 75 F.4th

at 687 (recognizing party's interest in intervening as defendant in suit that would make it *harder* to vote by mail).[3]

And again, contrary to the Republican Party Committees' representations, no precedent holds that *every* election-related change will impermissibly confuse voters and throw elections into chaos. *Purcell* concerned the complications posed by "conflicting orders" about a voter ID law from an Arizona district court and the Ninth Circuit in the final weeks before an election. 549 U.S. at 4. This case is about a different issue on a much different timeline, with no meaningful prospect of confusion. Because this litigation is on pace for resolution well before any absentee ballots are printed, the Committees cannot—and do not—argue that a voter who attempts to return an absentee ballot in an envelope that does not require a witness declaration will suffer such confusion that they may give up on voting altogether. Rather, enjoining the Witness Requirement will simply eliminate a burden with no further action required by voters, consistent with the kinds of modest improvements to voting procedures that are ordinarily implemented between election cycles. Nothing about Plaintiffs' requested relief could reasonably require the Committees to "spend substantial resources." Mot. 10; *cf. Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (affirming denial of intervention where "[n]othing in the complaint" threatened interests identified by movants). Thus, "any detrimental impact" on the Republican Party Committees "is pure speculation." *Sokaogon Chippewa Cmty.*, 214 F.3d at 947 (affirming denial of intervention).

---

[3] The Republican Party Committees cite *Shays v. Federal Election Commission*, 414 F.3d 76 (D.C. Cir. 2005), but *Shays* was a challenge by members of Congress to campaign finance regulations that the members alleged would force them into a competitive disadvantage. *See* 414 F.3d at 85. Again, the Committees never suggest that, much less explain how, enjoining the Witness Requirement would disadvantage Republican voters or candidates, let alone result in the "illegal structuring of a competitive environment." *Id.*

The Republican Party Committees' only other effort to identify an impaired interest is to cite *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201 (7th Cir. 1982), for the notion that "an adverse decision from this Court could prevent Movants from defending their rights at all." Mot. 10. But *Meridian Homes* affirmed the *denial* of intervention. In that case, the Seventh Circuit recognized the need for "rigor in the requirement that the [would-be intervenor's] interest be direct and substantial." 683 F.2d at 204. The court rejected the requested intervention because movants "claim[ed] only an indirect interest in the subject matter of the litigation," and because the movants would have other opportunities to vindicate their interests. *Id.* Likewise here, the Republican Party Committees remain free to pursue their general interests in election policy through the Wisconsin Legislature, where Republicans enjoy large majorities, so long as they comply with federal law. But the Federal Rules of Civil Procedure do not require courts to indulge political party intervention any time a party committee recites slogans about "election integrity" or "voter confusion" that are far afield from the case at hand.

### C.   The Republican Party Committees' claimed interests are adequately represented by Defendants.

"[P]rivate parties should not be allowed to hijack, via intervention, a government suit." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996). Because the Republican Party Committees fail to establish a lack of adequate representation by the named governmental defendants—who are responsible for defending the same interests and goals that the Committees assert—they do not satisfy the final precondition for intervention as of right.

The Seventh Circuit applies a three-tiered standard for determining adequacy of representation: Under the strictest test—which "applies when the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors"—

10

adequate representation is presumed "unless there is a showing of gross negligence or bad faith." *Bost*, 75 F.4th at 688 (cleaned up) (quoting *Planned Parenthood*, 942 F.3d at 799). "If the prospective intervenor and the named party have 'the same goal,'" the intermediate standard applies, under which "the applicant can only show inadequate representation by pointing to 'some conflict' between itself and the existing party." *Id.* (quoting *Planned Parenthood*, 942 F.3d at 799). Even when "there is no notable relationship between the existing party and the applicant for intervention," the applicant for intervention must show "that representation of his interest [by the existing party] '*may be*' inadequate." *Id.* (alteration and emphasis in original) (quoting *Planned Parenthood*, 942 F.3d at 799).

At a minimum, because the Republican Party Committees and Defendants have "identical" interests in election integrity, election administration, and minimizing voter confusion, they share the "same goal" in this case and thus the intermediate standard must be applied. *Bost*, 75 F.4th at 688–89. In *Democratic National Committee v. Bostelmann*, No. 20-cv-249-WMC, 2020 WL 1505640, *5 (W.D. Wis. Mar. 28, 2020), the Western District of Wisconsin denied intervention as of right to the same Republican Party Committees as here when they sought to defend challenged election statutes.[4] As the Court explained, "Defendants [including WEC] and proposed intervenors currently share the same goal: to uphold the [legality] of the challenged laws." *Id.* at *2; *see also Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013) (affirming denial of intervention where movants had "exactly the same goal as the state" in "protecting [a statute] against [plaintiffs'] challenge."). The intervention request fails here for the same reasons.

---

[4] In *Bostelmann*, the court ultimately allowed the Republican Party Committees to intervene permissively. *Bostelmann*, 2020 WL 1505640, at *5. For the reasons discussed in Section II, *infra*, permissive intervention is not appropriate here.

Defendant WEC is responsible for "ensur[ing] the integrity of individual ballots as well as election results in Wisconsin." *Wisconsin's Commitment to Election Integrity*, Wis. Elections Comm'n, https://elections.wi.gov/wisconsins-commitment-election-integrity (last accessed Oct. 30, 2023). Additionally, Defendant Clerks of the Cities of Brookfield, Madison, and Janesville "are entrusted with the responsibility of ensuring fair, accessible, and transparent elections" and the "obligations to protect the integrity of elections and ensure public confidence in the election process." *Election Administration Manual*, Wis. Elections Comm'n (Sept. 14, 2022), https://elections.wi.gov/resources/manuals/election-administration-manual; *see also* Wis. Stat. § 7.15 (1)(e) ("The clerk shall inspect systematically and thoroughly the conduct of elections in the municipality so that elections are honestly, efficiently and uniformly conducted."). The Republican Party Committees' claimed interests are identical to these duties and obligations. *See* Mot. 6–8.

Thus, this case is even easier than the denial of intervention affirmed in *American National Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144 (7th Cir. 1989). There, real estate developers and aligned plaintiffs sued the City of Chicago and its Commissioner of Inspectional Services to enjoin a regulation restricting the materials that could be used in plumbing and piping. *Id.* at 146. A plumber's union sought to intervene to defend the regulation, arguing that the materials that plaintiffs sought to use would jeopardize the health and safety of its members and other Chicagoans. *Id.* But the district court denied intervention, and the Seventh Circuit affirmed, because the defendant City adequately represented the health interests of all Chicagoans. *Id.* at 147. Likewise here, although the Committees may take a special interest in the rules for Republican

voters, the Witness Requirement affects all voters, and the named Defendants represent voters' interests in fair, clear, administrable voting rules.[5]

Notably, the Republican Party Committees fail to apply the Seventh Circuit's three-tiered standard for adequacy of representation. *See* Mot. 9–13 (reaching for precedent from the First, Third, Ninth, Tenth, Eleventh, and D.C. Circuits); *cf. Bost*, 75 F.4th at 690 (observing that many of the party committees' citations were to "out-of-circuit cases"). But even had the Committees invoked the Seventh Circuit's most lenient standard for establishing inadequate representation, they cannot satisfy it, as they do "not point to any arguments that [they] would make that" Defendants would not or could not. *Bost*, 75 F.4th at 690. This is the same flaw that proved fatal to the would-be political party committee intervenors in *Bost*. As in that case, the core of the Committees' argument is simply that their interests may "diverge with" Defendants'. *Id.* But, the Seventh Circuit explained, this initial comparison of interests simply determines which of the three adequacy tests applies. Even if the Republican Party Committees could identify divergent interests, "[t]his comparison alone cannot also make the showing required under the default rule to prove inadequacy. If that were the case, then the default rule would simply be that intervention as of right is automatic. That has never been our law." *Id.*

Just like their unsuccessful effort to intervene as of right in *Bostelmann*, the Republican Party Committees hint at only hypothetical differences in litigation strategy, suggesting that Defendants *may* have a "*potential* preference" to resolve this case on sovereign immunity and

---

[5] The Committees' related asserted interests are entirely derivative of their interests in election integrity and administration. They say, for example, that an adverse merits decision would result in the expenditure of resources to "ward off" voter confusion, Mot. 10, but the goal of ensuring that election rules are clear to voters is shared by Defendants.

standing grounds. Mot. 12 (emphasis added).[6] These "we're-just-guessing" qualifications were necessary when they moved to intervene because Defendants had not yet answered the complaint. WEC has now docketed a motion to dismiss that expressly challenges the merits of Plaintiffs' claims, *see* ECF No. 20, negating any concern about strategic differences that the Republican Party Committees may have harbored. A "vague prediction of a potential conflict . . . is not enough," *ABS Glob., Inc. v. Inguran, LLC*, No. 14-cv-503-WMC, 2015 WL 1486647, at *4 (W.D. Wis. Mar. 31, 2015), specifically where that vague prediction is directly refuted by WEC's motion to dismiss. *See Bostelmann*, 2020 WL 1505640, at *3 (rejecting intervention based on argument that named defendants might not fully defend challenged laws where "this mere hypothetical has obviously not yet come to pass").[7]

Bostelmann* rejected another trio of arguments that the Committees appear to have copied here almost verbatim. As the Court observed, the Republican Party Committees "note that defendants represent the 'public interest,' and have to consider the expense of defending state laws, the social and political divisiveness of elections issues, their own desires to remain politically popular, and the interests of opposing parties." *Id.* at *4; *cf.* Mot. 12 (asserting identical interests). But, the Court explained, "different political considerations held by the proposed intervenors and defendants are not sufficient by themselves to show inadequate representation." *Bostelmann*, 2020 WL 1505640, at *4 (citing *Am. Nat. Bank & Tr. Co. of Chicago*, 865 F.2d at 148 (differing "political considerations" between City and prospective intervenor not enough to make requisite

---

[6] The Committees never explain why their interests in election integrity and administration depend on the analysis—as opposed to the result—of any final judgment.

[7] The Committees do not provide any explanation for why their belief "that absentee-voting protections promote election integrity, transparency, and accountability," Mot. 12, is necessarily in conflict with WEC's chosen descriptors in the cited May 2020 report. The statements are not mutually exclusive, or even in tension.

"concrete showing of inadequacy of representation"); *Keith*, 764 F.2d at 1270 (proposed intervenor's different political and moral justifications for defending statute did not create conflict sufficient to rebut presumption of adequate representation)).

The Republican Party Committees have failed to demonstrate inadequacy of representation under any standard. They have thus failed to establish that they satisfy the necessary requirements of intervention as of right.

## II.    The Court should deny the Republican Party Committees permissive intervention.

For the reasons discussed above, the Republican Party Committees are not entitled to intervention as of right. Nor is there good reason to permit the Republican Party Committees to permissively intervene in this suit. Permissive intervention under Rule 24(b) is discretionary where a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As the Seventh Circuit explained in *Bost*, "[t]here are many sound reasons to deny a motion for permissive intervention. We have noted in the past that adding parties is not costless, and time is not the only payment." 75 F.4th at 691. "Increasing the number of parties to a suit can make the suit unwieldy," and the duplication becomes harder to justify where the named defendants adequately represent the intervenors' interests. *Id.* (quoting *Solid Waste Agency*, 101 F.3d at 508).

Here, the Republican Party Committees claim to represent the "mirror-image" of plaintiffs, which, to be sure, is sometimes a reason to grant permissive intervention to political parties. *See, e.g.*, *Bostelmann*, 2020 WL 1505640, at *5. But while the mirror-image of the Republican Party Committees—the Democratic National Committee and the Democratic Party of Wisconsin,

15

respectively—were plaintiffs in *Bostelmann*, neither is a party to this litigation, which was brought by four individual voters.[8]

Adding the Republican Party Committees as defendants in this case would lead to "accumulating . . . arguments without assisting the court." *Allen Calculators v. Nat'l Cash Reg. Co.*, 322 U.S. 137, 142 (1944). The Committees have failed to identify anything that they will bring to this litigation that is not already covered by Defendants. Nothing will be gained by clogging the Court's docket with duplicative briefing and arguments. And any missing perspectives or novel legal arguments that they might wish to raise may be adequately presented as *amici curiae* without burdening the existing parties with potential additional discovery or motions practice. *But see Sierra Club*, 358 F.3d at 518 (observing that proposed intervenor's mere "political" concern "does not necessarily justify even a filing as *amicus curiae*").

## CONCLUSION

For the reasons set forth above, the Court should deny the Republican Party Committees' motion to intervene.

---

[8] As the Seventh Circuit's decision in *Bost* makes clear, even where the plaintiff is a political actor—there, the lead plaintiff was a sitting Republican congressman—the opposing political party is neither entitled to, nor should the district court necessarily exercise its discretion to allow, intervention. *See Bost*, 75 F.4th at 690–91.

Respectfully submitted this 30th day of October, 2023.

Diane M. Welsh                                    */s/ Uzoma N. Nkwonta*
(Wisconsin State Bar No. 1030940)                 Uzoma N. Nkwonta
PINES BACH LLP                                    Jacob D. Shelly
122 W. Washington Ave, Suite 900                  Omeed Alerasool
Madison, WI 53703                                 Samuel T. Ward-Packard
Telephone: (608) 251-0101                         (Wisconsin State Bar No. 1128890)
Facsimile: (608) 251-2883                         ELIAS LAW GROUP LLP
dwelsh@pinesbach.com                              250 Massachusetts Ave. NW, Suite 400
                                                  Washington, D.C. 20001
                                                  Telephone: (202) 968-4652
                                                  unkwonta@elias.law
                                                  jshelly@elias.law
                                                  oalerasool@elias.law
                                                  swardpackard@elias.law

                                                  *Attorneys for Plaintiffs*

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 30th day of October, 2023, with a copy of this document via the Court's CM/ECF system.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta