IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUSAN LIEBERT, et al.,

      Plaintiffs,

      v.                          Case No. 23-CV-672

WISCONSIN ELECTIONS
COMMISSION, et al.,

      Defendants.

---

## COMMISSION DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

---

## INTRODUCTION

Plaintiffs' challenges to Wisconsin's absentee ballot witness requirement under section 201 of the Voting Rights Act and section 10101 of the Civil Rights Act both fail to state a claim and are barred by the Eleventh Amendment.

Their claim under the Voting Rights Act conflates witnessing with "vouching" and depends on an unreasonable, novel interpretation of Wisconsin's witness statute, Wis. Stat. § 6.87(2), that neither the Commission nor anyone else espouses. And their Civil Rights Act claim fails because witnessing the voter's marking of his ballot and the certification of it do not require the voter to provide immaterial information about himself for purposes of voting absentee in the election.

Even if Plaintiffs stated a claim, their complaint still must be dismissed because both the Wisconsin Elections Commission, as an entity, and the individual Commission defendants are entitled to Eleventh Amendment immunity.

## ARGUMENT

## I. Plaintiffs' complaint fails to state a claim under the Voting Rights Act and Civil Rights Act.

Plaintiffs' complaint should be dismissed in its entirety because it fails to state a claim. Plaintiffs' argument under the Voting Rights Act conflates witnessing with "vouching" and hinges on their misreading of the relevant state statute. Their argument about section 10101 of the Civil Rights Act attempts to expand that statute from a prohibition on requiring unneeded or duplicative information about a voter to preventing states from confirming compliance with election procedures. Their theory also ignores that, even if section 10101 reached that far, such confirmations would be material to whether a voter is qualified to vote under Wisconsin law.

### A. Wisconsin's absentee ballot witness requirement is not prohibited by section 201 of the Voting Rights Act.

Section 201's vouching prohibition does not forbid Wisconsin's absentee ballot witness requirement, for two independent reasons. First, it does not require the voter to "prove his qualifications by voucher" of another person.

Second, witnesses are not required to be "registered voters or members of any other class."

> ### 1. Wisconsin's witness requirement does not require a voter to "prove his qualifications by the voucher" of another person.

Wisconsin's absentee ballot witness requirement does not require the voter to "prove his qualifications by voucher" of another person. Witnessing is not vouching, and Plaintiffs misread what the witness attests to.

> ### a. Plaintiffs conflate witnessing with vouching.

Plaintiffs claim that Wis. Stat. § 6.87(2) requires someone to "vouch for" a voter's qualifications within the meaning of section 201. Most basically, that's wrong because all the state law requires is witnessing, and witnessing and vouching are two different things.

A witness is "one who sees or knows something and testifies about it." A "witness" is "one asked to be present at a transaction so as to be able to testify to its having taken place."[1] To vouch, in contrast, is "to supply supporting evidence or testimony" or "to give personal assurance."[2] The federal hearsay rule illustrates the difference between witnessing and vouching: witness testimony recounting an out-of-court statement is not hearsay so long as it is

---

[1]   *Witness*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/witness (last visited Nov. 30, 2023).

[2]   *Vouch*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/vouch (last visited Nov. 30, 2023).

not offered for the truth of the matter asserted, *i.e.*, does not purport to vouch for the third-party declarant. *See* Fed. R. Evid. 801(c). A witness under Wis. Stat. § 6.87 "vouches" for nothing about a voter: he simply reports that he was present and watched the marking of the ballot.

Plaintiffs never explain how witnessing is equivalent to vouching. Their section 201 claim fails from the start.

> **b.   Plaintiffs' theory depends on a novel, unreasonable reading of Wis. Stat. § 6.87(2).**

Plaintiffs' theory that a witness is really vouching hinges on the assumption that a witness attests not only to what happens while the voter marks her ballot, but also facts about the voter's identity, plans, ability to vote in person, and address. That misreads Wis. Stat. § 6.87(2).

As discussed in Plaintiffs' opening brief, Wis. Stat. § 6.87 requires the witness only to attest about his presence and what he observes while the voter marks her ballot. The statute provides text that appears on the preprinted ballot envelope that the voter seals and signs. That preprinted content requires a voter to certify to two sets of information—the first set involving facts known to herself, which the voter certifies to under penalty of perjury, and the second about the voting process, which the witness attests to under penalty of perjury. Wis. Stat. § 6.87(2). In contrast to the first set of information, everything in the second sentence consists of things the witness knows: whether the witness was

present, whether the voter voted in her presence, whether anyone else marked the ballot, and whether the voter marked the ballot so that no one could see how she voted. *Id.*

Plaintiffs' implicit basis to make "vouch" and "witness" synonymous is to assume that the witness certifies not just to the statements appearing in the sentence above the witness certification, but also to the set of statements appearing two sentences above—facts that he may not or cannot know. That earlier sentence discusses facts a person might have to vouch about—What are the voter's intentions? Can she really get to the polls on election day?—and are not things that can be witnessed.

That theory collapses because the statute does not require a witness to have or acquire such knowledge. A witness testifies only to the second set of voter certifications in the sentence above the witness's certification. Five reasons show why.

First, the nature of witnessing allows a witness to certify, under penalty of perjury, only to things she can actually "witness." A witness can see and experience only the statements in the second set of voter certifications. Plaintiffs' alternative reading, in contrast, would not limit a witness's job to attesting to what he saw; it would require every witness to attest, under threat of criminal sanction, to facts he may not or cannot know. That is absurd.

Plaintiffs' only response to that absurdity is that it must be a bad statute (Dkt. 42:18), but that's not how statutory interpretation works. Avoiding absurd constructions is a basic canon of statutory interpretation. *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."). Faced with competing interpretations of a law, courts avoid the absurd one. Here, Plaintiffs' reading must be rejected because it creates absurd results.

Second, the structure of the statute confirms that the witness certifies to only certain voter certifications. The certifications are grouped into two sentences: the first, which must be attested to by the voter under penalty of perjury, contains five pieces of information a witness might not or cannot know. The second, which only the witness attests to under penalty of perjury, includes the events the witness personally experiences. Had the Legislature intended for a witness to certify to all eight, it would have written a single sentence.

Third, Plaintiffs assume that two words in the witness certification can mean only one thing, but they are amenable to multiple readings. They focus on the word "above," but that word does not answer the question. Plaintiffs assume it must mean "all of the above." But another, and more natural

reading, is that it refers to the sentence physically "above" the witness's certification sentence on the pre-printed certificate. Plaintiffs also assume that the plural "statements" must mean "all of the statements, in both sentences," but that too is also just one of multiple readings. The second sentence of voter certifications has multiple statements within it, and so attesting to everything in that sentence is attesting to the "above statements."

Fourth, Plaintiffs rely on a statutory reading no one has made or used. Neither the Complaint nor Plaintiffs' brief offers an indication that the Commission or any clerk interprets Wis. Stat. § 6.87(2) in the way Plaintiffs propose.[3] To the contrary, the Commission's voting instructions, included with the Complaint (Dkt. 1:12 (form Form EL-128)), instruct the witness to attest only to the second set of voter certifications. Plaintiffs have no support for their announcement that the Commission's position is a "litigation-driven limitation." (Dkt. 42:17.) Instead, this case features the opposite problem—Plaintiffs engage in a "litigation-driven" reading of the statute.

Finally, Plaintiffs' surplusage argument (Dkt. 42:17), fails to read all the content of the voter certification sentence and forgets that the Legislature may

---

[3] This includes Plaintiffs' counsel in a state court case about the witness requirement. Plaintiffs point out that counsel there represents a different client (Dkt. 42:20 n.5), and of course attorneys can argue diametrically different things about a statute on behalf of different clients. But no one in that case has taken the position Plaintiffs argue for here.

convey similar information in multiple ways. Plaintiffs assume that "the above statements are true" and "voting procedure was followed" are completely synonymous, but they are not. Most basically, the fact of the witness's presence is not a "voting procedure," but the witness must attest it is true. And beyond that, the Legislature could require the witness to attest both to the truth of the statements and to the correctness of the voting procedure. As the Wisconsin Supreme Court remarked in *Milwaukee District Council 48 v. Milwaukee County*, 2019 WI 24, ¶ 25, 385 Wis. 2d 748, 924 N.W.2d 153, "We should be wary . . . of 'creat[ing] unforeseen meanings or legal effects from' what is nothing more than a 'stylistic mannerism.'" (alteration in original).

As the Commission's voting instructions reflect, Wis. Stat. § 6.87(2) does not require a witness to vouch about anything relating to a voter. It requires a witness to attest only to what happens during the marking of the ballot. That does not violate section 201 of the Voting Rights Act.

> ### c. Plaintiffs fail to distinguish the case law holding that witness requirements for absentee voting comply with section 201.

The only courts to have examined whether witness requirements violate section 201 have concluded they do not. *See People First of Alabama v. Merrill*, 467 F. Supp. 3d 1179, 1224–25 (N.D. Ala. 2020); *Thomas v. Andino*, 613 F. Supp. 3d 926, 961–62 (D.S.C. 2020). As the *Thomas* court reasoned, "[t]here would be no need to . . . require the *witness*, who may or may not know the

voter, to sign upon the witness line for the purpose of verifying that the voter is registered or 'qualified' to vote." *Thomas*, 613 F. Supp. 3d at 962.

Plaintiffs' only answer to *Merrill* and *Thomas* again relies on their misreading of the Wisconsin statute. They say the state statutes at issue in those cases required a witness only to attest to witnessing the vote, not to vouching for the voter's "own attestation about qualifications." (Dkt. 42:20.) But attesting about witnessing the vote is all that Wisconsin requires, as well. There is no daylight between those cases and this one.

### d. Plaintiffs' argument about a need to prove race discrimination is another straw man.

Plaintiffs dedicate multiple pages of their response to rebutting an argument that a section 201 plaintiff must prove at least a similarity to a statute with racially discriminatory intent. (Dkt. 42:22–24.) While one of the proposed intervenors may have wanted to make such an argument, that is not the Commission's point.

The Commission's point is that the historical framework of section 201 sheds light on the meaning of "voucher" and "qualifications," and rejects a reading of that statute that would treat neutral, common state voting regulations as violating federal law.

### 2. Witnesses are not required to be "registered voters or members of any other class."

The absentee ballot witness requirement is not prohibited under section 201 for a second reason: witnesses are not required to be "registered voters or members of any other class." 52 U.S.C. § 10501(b).

This case is like *Thomas*, where the court concluded that requiring a witness signature on an absentee ballot did not require the participation of a registered voter or member of any other class. *Thomas*, 613 F. Supp. 3d at 962.

Plaintiffs say that *Thomas* is different because the competent witnesses there could be anyone, while Wisconsin requires that they be adult U.S. citizens. (Dkt. 42:22–23.) But their suggestion (Dkt. 42:22 n.6) that there cannot be *any* limit on who is a competent witness—even limiting eligibility to adults—ignores the meaning of "class" in section 201: as the *Thomas* court stated, the point is not that there can be *no* limitation on who can serve as a witness, but rather that a "myriad of competent individuals" can serve as a witness. *Thomas*, 613 F. Supp. 3d at 962. That means that an elector voting absentee will not be constrained in locating someone to witness the marking of the ballot.[4]

---

[4] Wisconsin Stat. § 6.87(2) exempts overseas voters from the requirement that a witness be a U.S. citizen, recognizing that that would be more difficult abroad. Wis. Stat. § 6.87(2).

This is not like the statutes discussed in *Greater Birmingham Ministries v. Secretary of State for State of Alabama*, 992 F.3d 1299, 1336 (11th Cir. 2021), where courts invalidated state laws requiring registered voters to vouch for registration applicants because it served as a hurdle for Black voters in communities where there were few registered voters. The Commission knows of no case that has invalidated witness requirements requiring that witnesses be adult citizens.

Wisconsin's witness requirement asks no one to vouch for a voter's qualifications and does not run afoul of the Voting Rights Act.

### B.     The witness requirement does not violate the materiality provision of the Civil Rights Act.

Plaintiffs allege an alternate claim—that the absentee ballot witness requirement of Wis. Stat. § 6.87(2) violates the materiality provision of the Civil Rights Act. This assertion also fails to state a claim.

The "materiality provision" of the Civil Rights Act, section 10101, prohibits states from denying a voter the right to vote due to an error on a record or paper relating to any act requisite to voting. 52 U.S.C. § 10101(a)(2)(B). Only errors that are "not material in determining whether such individual is qualified under State law to vote in such election" are relevant to this analysis. *Id.* Plaintiffs' claim here fails for two reasons: ensuring compliance with voting procedures is not within the scope of what

section 10101 potentially prohibits, and even if it were, the witness's attestation would be material to determining whether a voter is qualified to vote under Wisconsin law.

> ### 1. Requiring a person to witness the voter's marking of her ballot is not an "error or omission on any record or paper" within the meaning of section 10101.

First, requiring a person to witness an absentee voter's marking of her ballot is not an "error or omission on any record or paper." 52 U.S.C. § 10101(a)(2)(B). It is a required *procedure*, reasonably designed to ensure the integrity of absentee voting. It is not a needless or duplicative provision of data about the voter, like her Social Security number.

While Plaintiffs say the materiality provision has been applied to strike down procedures (Dkt. 42:27–28), the cases they cite don't support that assertion. *Schwier v. Cox*, 340 F.3d 1284, 1285–86 (11th Cir. 2003), which actually addressed only whether the plaintiffs had a private right of action, involved whether voters could legally be required to provide their Social Security numbers. *La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 540–41 (W.D. Tex. 2022), involved a challenge to voters' being required to provide their driver's license or Social Security numbers. And *In re Georgia Senate Bill 202*, 2023 WL 5334582, at *2 (N.D. Ga. 2023), was a challenge to a law that required voters to provide their year of birth on the ballot envelope.

All these cases challenged requirements that voters provide information about themselves, not procedural requirements about marking ballots. As an example of the difference, the court in *In re Georgia Senate Bill 202* noted that absentee voters in Georgia must execute an oath that they properly followed the required voting process. But the plaintiffs *didn't* challenge that requirement; they challenged only the requirement to provide year-of-birth information about the voter. 2023 WL 5334582, at *1–2.

Plaintiffs offer no case that has held that documenting compliance with a required voting procedure is an error or omission on a record or paper. The Commission has located no case that has treated procedural confirmation requirements—confirmations that the voter has properly voted—as a record "relating to an act requisite to voting" within the meaning of section 10101.

> **2.** **Even if a witness's attestation were a record within the meaning of section 10101, it would be material to determining whether a voter is qualified to vote under state law.**

Even if the witness's written confirmation of his presence and the voter's compliance with the procedure were such a record, it would be material to determining whether the voter is qualified under state law to vote in such election. A voter's absentee ballot counts under state law only if her vote is witnessed and she votes in a particular way. Wis. Stat. § 6.87(2), (4)(b)1.

This case is like *Common Cause v. Thomsen*, 574 F. Supp. 3d 634 (W.D. Wis. 2021), where this Court held that requiring a signature for a valid ID was "material" to determining whether the individual is qualified to vote. As here, the plaintiff in that case argued that being "qualified" to vote meant only substantive voting qualifications such as being a citizen, a resident of Wisconsin, and at least 18 years old, and that a signature on an ID was not a substantive qualification on that list. *Common Cause,* 574 F. Supp. 3d at 646. This Court rejected the plaintiff's challenge because it disagreed that "qualified to vote" was limited to those substantive qualifications:

> But "qualified" in § 10101(a)(2)(B) is not limited to these substantive qualifications.
>
> The phrase "qualified under State law" is defined in § 10101(e): the words 'qualified under State law' shall mean qualified according to the laws, customs, or usages of the State." Under Wisconsin law, an individual is not qualified to vote without a compliant ID. Defendants' straightforward argument squares with the statutory text: an individual isn't qualified to vote under Wisconsin law unless he or she has one of the forms of identification listed in § 5.02(6m), so any required information on an ID is indeed "material" to determining whether the individual is qualified to vote.

*Common Cause,* 574 F. Supp. 3d at 636 (footnote omitted).

The same is true here: a voter marking an absentee ballot must comply with certain procedures, including voting before a witness and in a way that no one can see how she voted. Wis. Stat. § 6.87(4)(b)1. The witness must certify that he was present and watched these procedures complied with, and he must provide an address so that election officials can contact him, if needed, to

confirm those facts. Wis. Stat. § 6.87(2). The witness requirement is thus material to determining whether the individual is qualified to vote in that election under Wisconsin law.

Plaintiffs assert that *Common Cause* is consistent with their claim, but they misunderstand the case. They describe the underlying facts as a challenge to a form of voter ID that included the same information as the substantive voting qualifications of age, residency, and citizenship. (Dkt. 42:31.) That is incorrect. The question was whether the voter ID *signature* requirement was outside of what it means to be "qualified under State law to vote for purposes of section 10101(a)(2)(B). The Court held that the phrase was not limited in the way the plaintiff proposed.

Plaintiffs also say that the United States, which filed a statement of interest in state court litigation about Wisconsin's absentee ballot witness requirement in Wis. Stat. § 6.87(2) (Ex. 2 (*League of Women Voters of Wis. v. WEC*, No. 22CV2472 (Wis. Cir. Ct. Dane Cnty. Oct. 14, 2022) (Doc. 53:8))), did not conclusively state whether a witness requirement could be material. (Dkt. 42:30.) The Commission's point in its opening brief was simply that the United States "assume[d]" that a witness requirement may be material to determining a voter's qualification to vote under Wisconsin law. Had U.S. DOJ believed that witness requirements are categorically barred under section 10101, it seems hard to imagine it would have made such an assumption.

Plaintiffs' underlying theory is that a witness requirement must inherently run afoul of either section 201 of the Voting Rights Act or section 10101 of the Civil Rights Act: either the witness is vouching for the person's qualifications, violating the first law, or his participation and certification are not material to determine whether the voter is qualified to vote, violating the second. But this premise falls apart quickly when the statutes are read with any attention. Witnessing a vote is not "vouching" for the voter's compliance with the absentee voting procedure. And requiring a witness to attest to his presence and the voter's compliance with the voting procedures, if even possibly within the purview of section 10101, is material to determining whether the voter is qualified to vote under Wisconsin law.

Wisconsin Stat. § 6.87(2)'s absentee ballot witness requirement does not violate the Civil Rights Act's materiality provision. Plaintiffs' claim should be dismissed.

## II. Eleventh Amendment immunity bars Plaintiffs' claims against the Commission defendants.

Plaintiffs contend that Congress validly abrogated the states' sovereign immunity in the Voting Rights Act and, thus, the Eleventh Amendment does not bar their claims. They cite several decisions for their position, but none are binding or persuasive. The decisions holding that the states' sovereign immunity remains intact have the better argument.

16

### A.   Congress did not abrogate the states' sovereign immunity through the Voting Rights Act.

Plaintiffs argue that Congress has abrogated the states' sovereign immunity under the Voting Rights Act. (Dkt. 42:10.) But the cases they cite relied without analysis on *Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999), a case that did not properly apply the U.S. Supreme Court's test for abrogation of immunity.

To determine whether Congress abrogated state sovereign immunity, courts ask whether Congress expressed an unequivocal intent to do so and acted pursuant to a valid grant of constitutional authority. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "When Congress chooses to subject the States to federal jurisdiction, it must do so specifically." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246 (1985). It must make its intention to abrogate sovereign immunity "unmistakably clear in the language of the statute." *Id.* at 242. Congress must abrogate this immunity with "unmistakable clarity." *Dellmuth v. Muth*, 491 U.S. 223, 231 (1989).

Plaintiffs look to *Mixon v. Ohio*, 193 F.3d 389, 398 (6th Cir. 1999), where the Sixth Circuit held that the Voting Rights Act abrogated the states' immunity. But *Mixon* failed to follow the U.S. Supreme Court's admonition that Congress must abrogate this immunity with "unmistakable clarity." *Dellmuth*, 491 U.S. at 231. Instead, the *Mixon* court cited section 2 of the

Voting Rights Act, which merely prohibits "any State or political subdivision" from discriminating against voters on the basis of race. 193 F.3d at 398. That is not enough for abrogation under the Supreme Court's strict abrogation standard, and no Seventh Circuit case has followed *Mixon*.

Plaintiffs point to a Fifth Circuit case and some district court cases, but those simply followed *Mixon* without analysis. The Fifth Circuit decision, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017), conducted a one-sentence Eleventh Amendment immunity analysis and otherwise relied upon *Mixon*. The district court cases are the same. *See Ga. State Conf. of NAACP v. State*, 269 F. Supp. 3d 1266, 1274 (N.D. Ga. 2017) (relying on *Mixon*); *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, No. 1:21-CV-05337-SCJ, 2023 WL 7037537, at *141 (N.D. Ga. Oct. 26, 2023) (same); *Rose v. Raffensperger*, 511 F. Supp. 3d 1340, 1363 (N.D. Ga. 2021) (same); *People First of Alabama v. Merrill*, 479 F. Supp. 3d 1200, 1208 (N.D. Ala. Aug. 17, 2020) (same).

Plaintiffs' remaining cases do not provide support for their theory. The Eleventh Circuit case, *Alabama State Conf. of NAACP v. Alabama*, 949 F.3d 647, 649 (11th Cir. 2020), *cert. granted, judgment vacated sub nom. Alabama v. Alabama State Conf. of NAACP*, 141 S. Ct. 2618 (2021), was vacated by the U.S. Supreme Court. A Supreme Court decision "vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect." *County*

*of Los Angeles v. Davis,* 440 U.S. 625, 634 n.6 (1979) (citation omitted). Another of their cases, *Reaves v. U.S. Department of Justice*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005), held that Congress abrogated the states' sovereign immunity to VRA section 5 suits in enforcement cases by the federal government, which is not at issue here. And *Christian Ministerial All. v. Arkansas*, No. 4:19-CV-402, 2020 WL 12968240, at *5 (E.D. Ark. Feb. 21, 2020), supports the Commission's position, not Plaintiffs': the court there agreed with *Simpson v. Hutchinson*, 636 F. Supp. 3d 951 (E.D. Ark. 2022), and held that, in enacting the Voting Rights Act, Congress did "not chin the high bar set by the Supreme Court of expressing an 'unmistakably clear' intention to abrogate the States' right of immunity. *Id.* at *5–6.

Other cases have also concluded that the Voting Rights Act did not abrogate the states' immunity. The district court in *Simpson* found no "unmistakable clarity" in the text of the statute abrogating the states' sovereign immunity. 636 F. Supp. 3d at 960–61 (quoting *Dellmuth*, 491 U.S. at 232). The *Simpson* court addressed the plaintiffs' "strongest argument" that sections 3, 4, and 12 of the Voting Rights Act piece together what they believed to be a clear legislative intent to permit suits against states. *Id.* But the court found this to be merely an "inference," and confirmed that only an "unequivocal declaration" allows a court to conclude "that Congress intended to exercise its powers of abrogation." *Id.* (quoting *Dellmuth*, 491 U.S. at 232). Other courts

19

have agreed that the Voting Rights Act did not abrogate the states' immunity. *See, e.g., N.C. State Conf. of NAACP v. Cooper*, 397 F. Supp. 3d 786, 799 (M.D.N.C. July 2, 2019) (declining to follow *Mixon* and concluding "in the absence of a determination by the Fourth Circuit or the Supreme Court that the VRA abrogates North Carolina's Eleventh Amendment immunity, this Court declines to so hold"); *Krieger v. Loudon County*, 2014 WL 4923904, at *3 (W.D. Va. 2014), *aff'd by* 599 App'x 112 (4th Cir. 2015) (per curiam).

## B. The individual Commission defendants are entitled to Eleventh Amendment immunity, at least as to the Voting Rights Act claim.

The individual Commission defendants are entitled to immunity, as well, at least as to the Voting Rights Act claim. As to the section 10101 claim, to the extent Plaintiffs now frame their section 10101 claim as a wholesale attack on any witness requirement for absentee voting, *Ex parte Young* would allow a claim against the individual defendants for that claim only.

### 1. *Ex parte Young* does not apply to the Voting Rights Act claim.

As to the individual Commission defendants, Plaintiffs argue that the *Ex parte Young* exception to Eleventh Amendment immunity applies when "the suit seeks prospective relief against an ongoing violation of federal law." (Dkt. 42:13 (quoting *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508,

523 (7th Cir. 2021).) But they have identified no such ongoing violation on the part of the individual Commission defendants as to the Voting Rights Act.

Plaintiffs argue that the Commission defendants are engaging in a continuing violation simply by virtue of the fact that the Commission provides guidance to municipalities and voters about the absentee ballot procedure. Plaintiffs fail to look at what that guidance says. They point to sections of the guidance that repeat the statutory language but fail to acknowledge the Commission's interpretation of that language.

The Commission's written instructions for absentee voters tell them to "vote your ballot in the presence of an adult witness." (Dkt. 1:12 (Form EL-128).) The voter does not need to know the witness, as the witness simply "confirm[s] that you are the one completing your ballot." (Dkt. 1:12.) The Commission's manual further advises that the absentee ballot is marked by the voter, sealed in the envelope, "completed and signed by the absentee voter," and "witnessed by an adult U.S. citizen." (Dkt. 1:13–14 (2023 Election Administration Manual, at 98).) As this guidance, cited in the Complaint, shows, the Commission reads Wis. Stat. § 6.87(2) to require the witness to certify only to a voting process that he has personally witnessed.

Plaintiffs argue that the Commission "conflate[s] the *Ex parte Young* requirements with their argument on the merits by claiming, in effect, that the relevant materials prescribed by the Commission do not explicitly describe the

Witness Requirement as a voucher of the voter's qualifications." (Dkt. 42:14.) It's Plaintiffs who mix the two. It's not that the Commission's guidance "do[es] not *explicitly describe* the Witness Requirement as a voucher of the voter's qualifications," (Dkt. 42:14 (emphasis added)); it's that the Commission does not interpret the witness requirement in the way that Plaintiffs contend would be illegal.

There is, therefore, no alleged "ongoing violation of federal law" on the part of the individual Commission defendants, as required for the *Ex parte Young* exception to Eleventh Amendment immunity to apply. *See Driftless*, 16 F.4th at 523. The individual Commission defendants are immune from suit for this claim.

> **2.      To the extent Plaintiffs limit their section 10101 claim to an attack on any witness requirement for absentee voting, *Ex parte Young* would apply to a claim under section 10101.**

The Commission defendants initially argued that the Eleventh Amendment bars Plaintiffs' Civil Rights Act claim "[t]o the extent Plaintiffs allege claims against the individual Commission defendants due to 'different and inconsistent standards for absentee ballot witness addresses.'" (Dkt. 20:26 (citing Dkt. 1 ¶ 44).) Plaintiffs now deny that "different and inconsistent" enforcement by local election officials has anything to do with their Civil Rights Act claim. (Dkt. 42:15.) Instead, they frame their section 10101 challenge as a

pure challenge to any witness requirement under Wis. Stat. 6.87(2). (Dkt. 42:15.) Since the Commission treats the witness requirement as valid state law, its guidance to apply it would allege an "ongoing violation of federal law" under *Ex parte Young* for purposes of that claim as so framed.

The Commission has Eleventh Amendment immunity because Congress did not abrogate the states' sovereign immunity to suits under section 201 of the Voting Rights Act. And *Ex parte Young* does not allow suit against the individual Commission defendants under the Voting Rights Act because the Commission does not interpret state law in a way that would even arguably violate that law.

## CONCLUSION

The Commission defendants respectfully ask this Court to dismiss the Complaint against them.

Dated this 1st day of December 2023.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

KARLA Z. KECKHAVER
Assistant Attorney General

State Bar #1028242

STEVEN C. KILPATRICK
Assistant Attorney General
State Bar #1025452

Attorneys for Commission Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218 (CJG)
(608) 264-6365 (KZK)
(608) 266-1792 (SCK)
(608) 294-2907 (Fax)
gibsoncj@doj.state.wi.us
keckhaverkz@doj.state.wi.us
kilpatricksc@doj.state.wi.us

## CERTIFICATE OF SERVICE

I certify that on December 1, 2023, I electronically filed the foregoing *Commission Respondents' Reply Brief In Support of Motion to Dismiss* with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 1st day of December 2023.

s/Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General