IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUSAN LIEBERT, ANNA HAAS, ANNA POI, and
ANASTASIA FERIN KNIGHT,

                Plaintiffs,

  v.

WISCONSIN ELECTIONS COMMISSION,
DON M. MILLIS, ROBERT F. SPINDELL,
MARGE BOSTELMANN, ANN S. JACOBS,
MARK L. THOMSEN, JOSEPH J. CZARNEZKI,
MEAGAN WOLFE, MICHELLE LUEDTKE,
MARIBETH WITZEL-BEHL, LORENA RAE
STOTTLER, and WISCONSON STATE
LEGISLATURE,

                Defendants.

OPINION and ORDER

23-cv-672-jdp

---

      Plaintiffs are Wisconsin residents who have voted by absentee ballot in the past and wish to do so again in the 2024 election. They contend that their right to vote is unduly burdened by a Wisconsin law that requires a witness to every absentee ballot, and they assert claims under the Voting Rights Act and the Civil Rights Act. Plaintiffs sued the Wisconsin Elections Commission, the individual commissioners, and the municipal clerks for Madison, Janesville, and Brookfield. The court later granted the Wisconsin Legislature's motion to intervene.

      The legislature moves to dismiss the case on abstention grounds, or to stay the case pending state-court proceedings. Dkt. 48. The commission and commissioners move to dismiss the case on sovereign immunity grounds. Dkt. 19. Both sets of defendants also move to dismiss plaintiffs' claims on the merits. An organization called Restoring Integrity and Trust in Elections (RITE) filed an amicus brief in support of dismissing the case on the merits. Dkt. 32.

The municipal defendants did not file their own motions or take a position on the motions filed by the other defendants.

For the reasons explained below, the court will dismiss the commission from the case. But the court will otherwise deny the motions to dismiss without prejudice to defendants' renewing their arguments in a motion for summary judgment. The court concludes that it is appropriate to reserve a ruling on the merits for the time being while related cases are pending in state court.

ANALYSIS

A. **Legal background and overview of the claims**

Under Wisconsin law, "any otherwise qualified elector who for any reason is unable or unwilling to appear at the polling place in his or her ward or election district" may vote by absentee ballot. Wis. Stat. § 6.85(1). But state law requires citizens who wish to vote absentee to comply with various procedural requirements. One of those requirements is that someone else must witness the voter preparing the ballot. Wis. Stat. § 6.87(2) and (4)(b)1.

Section 6.87(4)(b)1 describes the process of preparing the ballot. The voter is to mark the ballot in the presence of the witness but should not show the witness how she voted. The voter then folds the ballot, puts it in the envelope, seals the envelope, and delivers the envelope to the clerk, either personally or by mail. *Id.*

Section 6.87(2) describes what the voter and witness must certify on the ballot envelope. The provision is lengthy, but it is at the heart of dispute in this case, so the court will quote the relevant language.

First, § 6.87(2) sets forth what the voter must certify on the ballot:

2

> I, . . . , certify . . . that I am a resident of the [. . . ward of the] (town)(village) of . . ., or of the . . . aldermanic district in the city of . . . , residing at . . . in said city, the county of . . . , state of Wisconsin, and am entitled to vote in the (ward)(election district) at the election to be held on . . . ; that I am not voting at any other location in this election; that I am unable or unwilling to appear at the polling place in the (ward)(election district) on election day or have changed my residence within the state from one ward or election district to another later than 28 days before the election. I certify that I exhibited the enclosed ballot unmarked to the witness, that I then in (his)(her) presence and in the presence of no other person marked the ballot and enclosed and sealed the same in this envelope in such a manner that no one but myself and any person rendering assistance under s. 6.87(5), Wis. Stats., if I requested assistance, could know how I voted.

Immediately below that paragraph, § 6.87(2) sets forth what the witness must certify:

> I, the undersigned witness . . . certify that I am an adult U.S. citizen and that the above statements are true and the voting procedure was executed as there stated. I am not a candidate for any office on the enclosed ballot (except in the case of an incumbent municipal clerk). I did not solicit or advise the elector to vote for or against any candidate or measure. [1]

Witnesses must also sign their name and provide their address. *Id.*

If an absentee ballot does not meet all these requirements, the clerk may return the ballot to the voter to correct the defect if there is time to do so. Wis. Stat. § 6.87(9). But if the defect is not corrected, the ballot cannot be counted. Wis. Stat. § 6.84(2).

One of the key disputes between the parties is over the interpretation of the first sentence in § 6.87(2) that describes what the witness must certify. Plaintiffs say that the phrase "the above statements" refers to *all* the statements that the voter certified, including the voter's residence, that the voter is entitled to vote and is not voting at another location, and that the

---

[1] If the voter is in the military or is living overseas, the witness does not have to be a U.S. citizen. Wis. Stat. § 6.87(2).

voter is unable or unwilling to vote in person or has recently moved. Defendants contend that "the above statements" refers only to the previous sentence that begins, "I certify that I exhibited the enclosed ballot unmarked to the witness. . . ."

Plaintiffs challenge the validity of the witness requirements in § 6.87 under both the Voting Rights Act and the Civil Rights Act. The relevant provision of the Voting Rights Act states that "[n]o citizen shall be denied, because of his failure to comply with any test or device, the right to vote in any Federal, State, or local election conducted in any State or political subdivision of a State." 52 U.S.C. § 10501(a). The statutory definition for "test or device" includes "any requirement that a person as a prerequisite for voting or registration for voting prove his qualifications by the voucher of registered voters or members of any other class." 52 U.S.C. § 10501(b). For simplicity, the court will refer to § 10501 as the Vouching Rule. Plaintiffs contend that § 6.87(2) violates the Vouching Rule because § 6.87(2) requires the witness to "vouch[]" for the voter's qualifications when the witness certifies that "the above statements" are true and because the witness must be an "adult U.S. citizen," which plaintiffs say is a "class" under § 10501(b).

The relevant provision of the Civil Rights Act states:

> (2) No person acting under color of law shall--
>
> . . .
>
> (B) deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(2). For simplicity, the court will refer to § 10101(2)(B) as the Materiality Rule.

Plaintiffs contend that § 6.87(2) and (4)(b)1 violate the Materiality Rule because: (1) preparing an absentee ballot is an "act requisite to voting"; (2) failing to comply with the witness certification requirement is an "error or admission on any record or paper"; (3) the information related to the witness requirement that must be included on the ballot "is not material in determining whether such individual is qualified under State law to vote in such election"; and (4) a voter's ballot may be rejected if the information related to the witness requirement is not included, which "den[ies] the right of an[] individual to vote in an[] election."

Defendants' contentions can be grouped into three broad categories: (1) the commission and commissioners should be dismissed on sovereign immunity grounds; (2) the court should abstain from hearing the case on federalism grounds, or alternatively stay the case pending resolution of related state proceedings; and (3) both of plaintiffs' claims fail on the merits. The court concludes that the commission but not the individual commissioners must be dismissed on sovereign immunity grounds. The court will not abstain from hearing the case, but the court will defer a decision on the merits of both of plaintiffs' claims, for the reasons explained below.

**B.  Sovereign immunity**

The commission and the commissioners contend that they may not be sued under the doctrine of sovereign immunity. The argument regarding the commission itself is different from the argument regarding the individual commissioners, so the court will consider them separately.

1. **The commission**

The general rule is that an arm of the state may not be sued in federal court. *Burrus v. State Lottery Com'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008). Plaintiffs don't challenge the commission's status as an arm of the state, and they don't identify any reason why the commission can be sued under the Materiality Rule (part of the Civil Rights Act), so the court will dismiss plaintiffs' claim against the commission under that statute.

The parties dispute whether Congress abrogated the commission's immunity under the Vouching Rule, which is part of the Voting Rights Act. "Congress may validly abrogate the States' sovereign immunity only by doing so (1) unequivocally and (2) pursuant to certain valid grants of constitutional authority." *Horne v. Flores*, 557 U.S. 433, 440 (2009).

Neither side cites any cases in which a court considered whether the Vouching Rule abrogates state sovereign immunity. Plaintiffs' argument on this issue consists primarily of discussing two cases: *Alabama State Conference of National Association for the Advancement of Colored People v. Alabama*, 949 F.3d 647, 651 (11th Cir. 2020), and *Mixon v. State of Ohio*, 193 F.3d 389, 398 (6th Cir. 1999).[2] But both of those cases were about § 2 of the Voting Rights Act, which expressly prohibits "any State" from imposing a practice that would deny any citizen the right to vote on account of race. 52 U.S.C. § 10301. The Vouching Rule does not include similar language but instead focuses on the rights of the voter ("no citizen shall be denied") rather than on who or what can be sued under the law.

---

[2] Plaintiffs also cite *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017), but there is no analysis in that opinion regarding sovereign immunity. The court simply cited *Mixon* for the proposition that "Congress passed [the Voting Rights] pursuant to its Fifteenth Amendment enforcement power, [and thus] validly abrogated state sovereign immunity." So *OCA* does not add anything to the reasoning in *Mixon* or *Alabama State Conference*.

But even if the court were to assume that the text of the Vouching Rule unequivocally expresses Congress's intent to abrogate state sovereign immunity, that is only the first half of the analysis. Plaintiffs must still show that Congress had the power to abrogate immunity. Again, plaintiffs cite *Alabama State Conference* and *Mixon*, which held that § 2 abrogated immunity under the Fifteenth Amendment, which prohibits race discrimination in voting. Plaintiffs say that the Fifteenth Amendment also authorized abrogation under the Vouching Rule.

Neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has decided whether the Congress can abrogate sovereign immunity under the Fifteenth Amendment, but this court will assume that the Fifteenth Amendment provides such authority. But that is not the end of the matter. When determining whether a statute validly abrogates immunity, the court must find one of two things: (1) the statute remedies actual constitutional violations; or (2) the statute is a congruent and proportional prophylactic measure based on a history of state constitutional violations. *See Tennessee v. Lane*, 541 U.S. 509, 520 (2004); *King v. Marion Circuit Court*, 868 F.3d 589, 591–92 (7th Cir. 2017). *Alabama State Conference* and *Mixon* were easy cases because § 2 prohibits the same conduct as the Fifteenth Amendment: racial discrimination in voting. That is not the case with the Vouching Rule. The primary purpose of the Vouching Rule may have been to deter racial discrimination. But a plaintiff suing under the Vouching Rule does not have to show discriminatory intent or impact to prevail. So plaintiffs were required to show that the Vouching Rule was a congruent and proportional response to past Fifteenth Amendment violations. Plaintiffs did not even attempt to do that, so they forfeited the issue. The court will dismiss the commission from the case.

### 2. The commissioners

Individual state officials are not entitled to sovereign immunity when a plaintiff seeks prospective relief for ongoing violations of federal law. *McDonough Associates, Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013). The commissioners argue that this exception doesn't apply to plaintiffs' Voting Rights Act claim (the Voucher Rule) or their Civil Rights Act claim (the Materiality Rule), but the commissioners assert different reasons for each claim.

As for the Voting Rights Act claim, the commissioners say that plaintiffs don't allege that the commissioners "are construing or enforcing the state statute in a way that reveals an ongoing . . . Voting Rights Act violation of any voucher of elector qualifications." Dkt. 20, at 24. More specifically, the commissioners say that the complaint confirms that they are construing § 6.87 as requiring a witness to certify only that a voter followed the proper procedure, not that the voter is entitled to vote, so the commissioners are already doing what plaintiffs say they should be doing. That argument is not really about sovereign immunity; it's about whether any past or future injury is fairly traceable to the commissioners. That's a question of standing, which is how the commissioners framed a similar argument in *Carey v. Wisconsin Elections Commission*, 624 F. Supp. 3d 1020, 1028 (W.D. Wis. 2022) (addressing commissioners' argument that the plaintiffs didn't have standing because the commission was not construing the statute at issue in a way that was adverse to the plaintiffs).

Regardless of how the issue is framed, the commissioners' argument fails. As alleged in the complaint, the commission has created an absentee ballot certificate that the voter and witness must sign. *See* Dkt. 1, ¶ 36. A copy of the certificate is shown below:

8



Plaintiffs didn't include the whole certificate in their complaint, but the court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015).

The commission's certificate largely tracks the language in § 6.87. Specifically, in "Step 2," it sets forth all the things the voter must certify. Then, in "Step 3," it states that the witness must certify that "the above statements are true," without specifying which statements it is

9

referring to. The court takes no position at this time regarding how the phrase "the above statements" should be construed. But if § 6.87 violates the Vouching Rule, it follows that the commission's certificate does as well, which would qualify as an ongoing violation. So the commissioners are proper defendants on plaintiffs' claim under the Voting Rights Act.

As for the claim under the Civil Rights Act, the commissioners say that they must be dismissed "to the extent [plaintiffs' claims] are based on different and inconsistent standards for absentee ballot witness addresses." Dkt. 20, at 25. Plaintiffs deny that their challenge is about inconsistent standards, and the complaint supports plaintiffs' view. Plaintiffs are challenging all aspects of the witness requirement in § 6.87 as violating the Civil Rights Act. The commissioners do not dispute that they are involved in implementing and enforcing § 6.87, so they are appropriate defendants on this claim.

**C. Request to abstain or stay**

The legislature contends that the court should abstain from hearing this case in light of two pending state-court cases, *Priorities USA v. Wisconsin Elections Commission*, No. 2023CV1900 (Dane Cty. Cir. Ct.) and *League of Women Voters of Wisconsin v. Wisconsin Elections Commission*, No. 2022CV2472 (Dane Cty. Cir. Ct.). Neither side provided this court with the complaints or any briefs filed in either of the state-court cases. But the parties seem to agree on the basic issues raised in both cases. In *Priorities USA,* the plaintiffs—who are represented by the same counsel as in this case—are challenging Wis. Stat. § 6.87(2) and (4)(b)1 under the Wisconsin Constitution. In *League of Women Voters*, the plaintiffs are contending that the requirement to include the witness's address on the absentee ballot violates the Materiality Rule.

In contending that this court should dismiss the case on abstention grounds, the legislature relies on the principles articulated in *Younger v. Harris*, 401 U.S. 37, 43–44 (1971), which held that a federal court may not enjoin state criminal proceedings absent exceptional circumstances. The legislature acknowledges that plaintiffs are not asking the court to enjoin any state-court proceedings, but defendants contend that an extension of *Younger* is justified under *SKS & Associates, Inc. v. Dart*, 619 F.3d 674, 676 (7th Cir. 2010). In that case, the court of appeals abstained from deciding a lawsuit filed by a landlord who contended that his federal rights were being violated by a state-court order that limited the landlord's ability to evict tenants. The court of appeals reasoned that *Younger* principles applied because the landlord's lawsuit "seeks to have a federal court tell state courts how to manage and when to decide a category of cases pending in the state courts." *Id.* at 679.

*SKS* doesn't support abstention in this case because plaintiffs are not seeking an injunction from this court that directs a state court to do anything, and plaintiffs' federal lawsuit does not directly interfere with either of the state-court lawsuits. A federal court may not abstain simply because a state court is deciding issues that overlap with the federal lawsuit. *See Huon v. Johnson & Bell, Ltd.,* 657 F.3d 641, 645–46 (7th Cir. 2011) ("Generally speaking, the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court.") (internal quotation marks omitted).

That is not the end of the matter because federal courts have broader discretion to stay cases pending resolution of other proceedings, even when abstention is not appropriate. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Grice Engineering, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010). One of the primary considerations is whether the stay could simplify the issues in the case. *Grice*, 691 F. Supp. 2d at 920. For the reasons explained below,

11

the court concludes that a partial stay is appropriate on both of plaintiffs' claims, but there are different reasons for staying each claim, so the court will discuss them separately.

### 1. Vouching Rule under Voting Rights Act

As already discussed, a key dispute on plaintiffs' claim under the Voting Rights Act is whether § 6.87 is properly construed as requiring witnesses to certify everything that the voter previously certified, including that the voter is entitled to vote. Plaintiffs say that it is; defendants say that § 6.87 requires the witness to certify only that the voter followed the correct process for preparing the absentee ballot.

Neither of the state-court cases involves a claim under the Voting Rights Act. But *Priorities USA* will likely require the Wisconsin courts to construe § 6.87 and to resolve the dispute regarding the scope of what the witness must certify. If the state court sides with defendants on that issue, plaintiffs' claim under the Voting Rights Act fails. Plaintiffs' claim hinges on their view that the witness must certify that the voter is entitled to vote and is not voting at another location, the voter's residence, and that the voter is unable or unwilling to vote in person or has recently moved. Plaintiffs do not contend that the witness "vouch[es]" for the voter's "qualifications" within the meaning of the Voting Rights Act simply by certifying that the voter followed the proper procedure for preparing the absentee ballot. Even if the state court adopts plaintiffs' proposed construction of § 6.87, and even if the state court does not render plaintiffs' Voting Rights Act claim moot by striking down § 6.87, the state court's construction of § 6.87 would resolve a central dispute on that claim.

The proper construction of § 6.87 is obviously a question of state law, not federal law. So it makes sense for this court to defer to the Wisconsin courts' decision on that issue. *See Connelly v. Dan Lepke Trucking LLC*, No. 15-cv-308-jdp, 2018 WL 11415193, at *1 (W.D. Wis.

12

May 16, 2018) ("[I]t makes sense to allow a state court to decide in the first instance disputed questions of state law that could have a significant impact on the [federal case.]"); *cf. Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir. 2009) (upholding decision not to decide state-law claim because it "will be definitively resolved by the courts of the state whose law governs those issues, and our court would be required to defer to that resolution because state courts are the authoritative expositors of their own state's laws").

Both plaintiffs and the commission oppose a stay, contending that the state courts may not resolve the claim in time for changes to be made to the ballot for the 2024 election. As an initial matter, if plaintiffs were concerned about the timing of a decision, they could have asserted their claims much earlier. At least one of the plaintiffs has been voting by absentee ballot since at least 2014, *see* Dkt. 1, ¶ 13, and the law they are challenging has been in effect since then. Plaintiffs identify no reason why they could not have filed this lawsuit years ago. A party "cannot manufacture exigency by tarrying." *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). In any event, *Priorities USA* was filed several months before this case, and the docket for that case indicates that the court will be issuing a decision soon.

Because *Priorities USA* could resolve or simplify plaintiffs' claim under the Voting Rights Act, this court will not resolve the merits of that claim now. But the court appreciates the time-sensitive nature of the claim, so the court will not stay activity by the *parties* on that claim. Instead, the court will deny the motions to dismiss this claim without prejudice, and allow the parties to continue litigating, including by filing summary judgment motions by the February 16 deadline. That way, if *Priorities USA* does not resolve the Voting Rights Act claim, this court will have the materials it needs to decide the claim on the merits expeditiously.

## 2. Materiality Rule under the Civil Rights Act

The parties have notified this court that the state circuit court issued its decision in *League of Women Voters* on January 2, 2024. Dkt. 54. In that decision, the court held that the requirement in § 6.87(2) to include the witness's address on the absentee ballot violated the Materiality Rule in the Civil Rights Act. Specifically, the court concluded that completing an absentee ballot is an "act requisite to voting," that failing to include the witness's address is an "error or omission on any record or paper," that a missing or incomplete witness address is "not material in determining whether such individual is qualified under State law to vote in such election," and that failing to count an absentee ballot with a missing or incomplete witness address "den[ies] the right of an[] individual to vote in an[] election." The state court did not immediately enter judgment in favor of the plaintiffs but instead stated that it would schedule oral arguments to determine the appropriate injunctive relief. Dkt. 54-1, at 8.

The decision in *League of Women Voters* potentially complicates the decision in this case. A federal court is not necessarily bound by a state court's interpretation of federal law, but this court cannot simply ignore a state-court decision on an issue that is currently before this court. If this court were to disagree with the state court regarding the application of the Materiality Rule to § 6.87, it could lead to confusion and chaos for both election officials and voters regarding which decision they should follow.

The scope of plaintiffs' Civil Rights Act claim in this case is not identical to the claim in *League of Women Voters*. Plaintiffs are contending in this case that all of the witness requirements § 6.87 violate the Materiality Requirement whereas *League of Women Voters* focused on the requirement to include the witness's address on the ballot. But there is significant overlap in the arguments raised by the parties in both cases, and the state court's

14

interpretation of the Materiality Rule has implications beyond the issue of the witness's address.

Neither side has addressed these concerns in their letters responding to the state court's decision. *See* Dkt. 54 and Dkt. 55. So this court will take the same approach on the claim under the Civil Rights Act as the claim under the Voting Rights Act. Specifically, the court will deny the motions to dismiss this claim without prejudice and allow the parties to continue litigating the claim. Included in any motion for summary judgment on the Civil Rights Act claim should be a discussion of the following issues: (1) whether principles of issue or claim preclusion will affect this case once judgment is entered in *League of Women Voters*; (2) if neither issue nor claim preclusion applies, whether this court should stay resolution of the Civil Rights Act claim pending resolution of *League of Women Voters* or the 2024 election, and, if so, what authority supports such a stay; and (3) if the court were to decide the Civil Rights Act claim, how confusion can be avoided or minimized in the event that this court reaches a different conclusion than the state court in *League of Women Voters*.

ORDER

IT IS ORDERED that the motions to dismiss or stay this case, Dkt. 19 and Dkt. 48, are GRANTED in part and DENIED in part as follows:

1. The Wisconsin Election Commission is DISMISSED.

2. The motions to dismiss or stay are otherwise DENIED without prejudice to defendants' raising their arguments in a motion for summary judgment.

Entered January 17, 2024.

> BY THE COURT:
>
> /s/
> _____
> JAMES D. PETERSON
> District Judge